**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

FILED
NOV 14 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| KIONA JORDAN,<br>　　　Plaintiff, | ) <br> ) <br> ) |
| | ) |
| | ) |
| R & O AURORA, INC.,<br>　　　Defendant. | ) <br> ) <br> ) <br> ) <br> ) |

JURY DEMANDED

07cv6452
JUDGE COAR
MAG. JUDGE DENLOW

## COMPLAINT

Plaintiff, KIONA JORDAN ("JORDAN"), by her undersigned attorney, and for her complaint against Defendant, states as follows:

## NATURE OF THE CASE

1. The cause of action for Plaintiff arises under Title VII of the Civil Rights Act, 42 U.S.C. section 2000e, as amended.

2. This court has jurisdiction over this matter pursuant to 42 U.S.C. section 2000e.

## JURISDICTION AND VENUE

3. Venue in the Northern District of Illinois is proper. The claim for relief arose in this state as required by 42 U.S.C. section 2000e.

1

4.    All conditions precedent have been fulfilled by Plaintiff, including the filing of a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") of the United States Government, and a receipt of a Right-to-Sue Letter from the EEOC. **(EEOC Charge and Right-to-Sue Letter attached as Exhibit A)**.

## PARTIES

5.    Plaintiff is female and a resident of the State of Illinois.

6.    Defendant, R & O AURORA, INC., is duly registered to conduct business in the State of Illinois.

7.    At all times pertinent hereto, Defendant, R & O AURORA, INC., has engaged in an industry affecting commerce and has had fifteen (15) or more employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year.

## COUNT I
## COMPLAINT OF KIONA JORDAN FOR
## HOSTILE WORK ENVIRONMENT SEXUAL HARASSMENT

8.    That Plaintiff was hired by R & O as a kitter on December 7, 2005 and placed to work at R & O's CATERPILLAR location.

2

9.   That during her employment, Plaintiff was supervised by LOUIS GREGG ("GREGG").

10.   That in his position, GREGG was a supervisory employee as defined by Title VII.

11.   That Plaintiff was a satisfactory and conscientious employee who performed assigned tasks in an acceptable manner consistent with R & O's standards and regulations.

12.   That while employed by R & O, from approximately mid-June 2006 to July 2006, Plaintiff was subjected to debilitating sexual harassment, inferior, miserable, and illegal terms and conditions of employment because of her sex, female.

13.   That during her employment, GREGG subjected Plaintiff to numerous instances of sexually inappropriate and unwanted conduct, including but not limited to unwelcome and suggestive comments.

14.   That on or about June 15, 2006, on approximately eight or nine occasions, GREGG made sexually offensive comments to me such as, "I love the way you look," "You are very sexy to me," and "You need to stop coming to work looking like that."

15.   That after GREGG's first offensive comment, Plaintiff politely told him that she had

3

a boyfriend and was not interested in him. However, GREGG responded, "I understand you have a boyfriend but nobody needs to know about us. I can take you to Chicago and nobody will find out about us." Plaintiff again told GREGG that she had a boyfriend and that she was not interested in him. Finally, at the end of that day, GREGG said to Plaintiff, "You do act like you are uncomfortable when I come around so I am going to leave you alone."

16.    That on or around June 17, 2006, GREGG said to Plaintiff, "I see you driving a Mustang, that's a nice looking Mustang. If I was you, I would do whatever I tell you to do if you want to keep it." Plaintiff then asked GREGG, "What is that supposed to mean?" GREGG responded, "You know what I mean." ERIKA WASHINGTON ("WASHINGTON") was present when GREGG made this comment to Plaintiff.

17.    That on or around June 24, 2006, Plaintiff asked GREGG if she could leave work early because her babysitter unexpectedly had to leave. GREGG responded, "I wouldn't have had a problem with you leaving early if you would have buttered me up the other day." Plaintiff told GREGG, "I am serious. I really need to go home." He responded, "You can leave under one condition, you come over to my house when I get off at 11:30 or 12. We can watch movies together. I got a lot of movies, especially a lot of x-rated movies that I want you to see." Plaintiff told GREGG, "No way, I ain't coming over and watching x-rated movies with you!" GREGG responded, "If you come over to my house I can guarantee you will be satisfied and you would end up falling in love with me." Plaintiff told him again, "I am not coming

4

over to your house, and I have to leave at 8." GREGG said, "Fine then. If you leave at 8 and get written up, don't be mad at me."

18.    That immediately after this incident, Plaintiff walked over to SENECA's work area and told him that GREGG wanted Plaintiff to come over to his house to watch x-rated movies. SENECA responded, "Is that why he has been coming over here by us? If I was you I would get a tape recorder and record him asking you that."

19.    That on the following Monday, on or about June 26, 2006, GREGG asked Plaintiff, "Why didn't you come over to my house like you said you would?" Plaintiff responded, "I told you I was not coming over to your house." GREGG then stated, "You should be glad that I didn't write you up for leaving."

20.    That on or about June 29, 2006, during a meeting between KARISSA JAMES ("JAMES"), WASHINGTON, and GREGG, GREGG raised his voice and yelled at Plaintiff, "Kiona, you know you know better than to leave those tickets in the tower. Karissa[JAMES] shouldn't have to tell you what to do, you have been here 7 months! If you don't like what's being said to you, you can be replaced! If you don't like it, just leave. You know where the door is."

21.    That Plaintiff was extremely embarrassed and humiliated by GREGG's conduct during the meeting.

5

22. That also on or about June 29, 2006, GREGG asked Plaintiff and other workers to line pieces of wood up against the wall so that the trucks would not mark up the wall. However, when GREGG gave them said assignment, he made a sexually offensive comment: "Kiona and Erika, I need you all to handle my wood.", referring to his penis. While laughing, GREGG then stated, "I'm just playing, but I really do need you to move some wood." JAMES witnessed this and stated to GREGG, "Now Louis, I told you about playing with those girls, you can't play with everybody like that. Don't get mad if one of those girls complains that you are sexually harassing them."

23. That on approximately June 29, 2006, Plaintiff complained about GREGG's sexual harassment to LESLIE MCGINNEST, a CATERPILLAR human resources employee.

24. That MCGINNEST stated that she could not help Plaintiff because GREGG was an R&O employee, and she [MCGINNEST] worked for CATERPILLAR.

25. That MCGINNEST then instructed Plaintiff to take her complaint to the R&O human resources contact, AMANDA "LNU" ("AMANDA").

26. That on or about June 30, 2006, Plaintiff complained to another R&O supervisor, RAY ABNER ("ABNER"). Plaintiff also gave ABNER a hand written note that detailed her sexual harassment complaints about GREGG. ABNER responded that

he would take the complaint to AMANDA at R & O's human resources. Together, they walked up to meet with AMANDA.

27.  That on or about June 30, 2006, Plaintiff brought GREGG's actions to the attention of AMANDA. ABNER also gave her Plaintiff's hand written notes. AMANDA stated to Plaintiff, "Kiona, I'm very sorry that this happened to you. I am going to get to the bottom of this and find out what's going on."

28.  That shortly after Plaintiff's complaint to AMANDA on June 30, 2006, AMANDA called JAMES and SENECA up to her office to discuss Plaintiff's complaint.

29.  That after JAMES returned from her meeting with AMANDA, JAMES told Plaintiff, "I told them how GREGG is extra friendly with you. I did not tell them everything because GREGG would have probably got fired."

30.  That after SENECA returned from the meeting with AMANDA, he stated to Plaintiff that "I told them everything that you had told me."

31.  That ultimately and as a result of her complaint of sexual harassment, Plaintiff was transferred, suspended and demoted, thus placing her in a position in which she was worse off for having complained.

32.  That Defendant's response to Plaintiff's complaint of sexual harassment is per se

negligent because said response had the effect of placing Plaintiff in an inferior position thereafter.

33.  That R & O failed to take reasonable corrective action to prevent the harassment Plaintiff suffered as a result of GREGG's conduct.

34.  That R & O could have prevented said sex discrimination if it had implemented an effective anti-sex discrimination policy.

35.  That R & O could have prevented said sexual harassment if it had implemented an effective anti-sexual harassment policy.

36.  That R & O condoned sexual harassment and failed to maintain a harassment-free work environment by failing to provide adequate training, counseling, and instructions to their employees and officers, especially GREGG, with respect to sexual harassment of female employees.

37.  That R & O condoned sexual harassment and failed to maintain a harassment-free work environment by failing to employ an effective anti-sexual harassment policy with respect to their employees, especially GREGG.

38.  That R & O failed to maintain a harassment-free work environment by failing to take effective corrective action against GREGG after R & O became aware that GREGG

8

was engaging in unwelcome sexual conduct toward Plaintiff.

39.     That as a result of these failures by R & O, GREGG used his authority as a supervisor to force his unwelcome sexual advances and offensive conduct upon Plaintiff.

40.     That R & O's treatment of Plaintiff was motivated by evil motive and intent, and was recklessly and callously indifferent to Plaintiff's federally protected rights.

41.     That the sex discrimination and sexual harassment Plaintiff was subjected to by the hands of R & O, their agents, representatives and employees was persistent in nature, unwelcome, extremely offensive, humiliating, and effective in creating a hostile and intimidating work environment for Plaintiff.

42.     That said continuous and persistent sex discrimination and sexual harassment adversely affected the terms and conditions of Plaintiff's employment with R & O.

43.     That as a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered the indignity of discrimination, the invasion of her right to be free from discrimination, and great humiliation which has manifested in physical illnesses and emotional stress on the relationships between Plaintiff and her friends, family, and colleagues.

9

44.    That as a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about her future and her ability to support herself, shameful embarrassment among her friends, colleagues, and co-workers, damage to her reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of life.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, JORDAN, respectfully requests this Court to provide the following equitable and legal remedies:

a.    Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

b.    Order a permanent injunction prohibiting Defendant from further acts of sexual discrimination and sexual harassment.

c.    Award Plaintiff, JORDAN, all costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

d.    Award Plaintiff, JORDAN, a judgment against Defendant for reinstatement, front pay, backpay and other compensatory damages.

e.    Award Plaintiff prejudgment interest.

f.    Grant judgment against Defendant for punitive damages for willful and wanton conduct.

g.    Enter an order requiring Defendant to implement effective steps to eliminate sex discrimination and sexual harassment from Defendant's organizations.

h.    Grant such other and further relief as this Court deems just and proper.

10

## COUNT II
## COUNT III - RETALIATORY TRANSFER, SUSPENSION AND DEMOTION

45.  Plaintiff incorporates the preceding paragraphs by reference here.

46.  That Plaintiff complained about GREGG's sexual harassment to Defendant's management employees.

47.  That on or around June 30, 2006, Defendant purportedly investigated Plaintiff's allegations of sexual harassment against GREGG.

48.  That on or around July 7, 2006, Plaintiff had a meeting with CECIL ("CECIL"), AMANDA, and BOB MCGEE ("MCGEE"), the human resources supervisor.

49.  That in said meeting, AMANDA stated to Plaintiff, "Kiona, the investigation is over with. You lied to us. You told us that GREGG said these things, and we have a witness who said you lied to us to get on first shift."

50.  That Plaintiff then asked, "Who is the witness that said I lied?" AMANDA responded, "We can't tell you that. Okay, we are suspending you for 3 days for lying." When you return, you will return to your Class 1 job as Repak.

51.  That Plaintiff was suspended from work from Friday July 7, 2006, through Tuesday

11

July 11, 2006.

52.    That Plaintiff was also transferred to a more physically challenging department.

53.    That Plaintiff was demoted from the kitter position to the repak position.

54.    That as a result, Plaintiff's job location changed, and her job class was downgraded from Class III to Class I.

55.    That as a further result of the demotion, Plaintiff had to work in much dirtier conditions that required a lot of manual labor and heavy lifting. Finally, Plaintiff was one of only two female employees in that entire department. The other female employee was a supervisor and did not have to engage in the same heavy lifting that Plaintiff was required to do.

56.    The adverse actions stated above followed Plaintiff's protected activity within such a period of time as to raise an inference of retaliatory motivation.

57.    That the conduct alleged above by Defendant as well as other inferior and retaliatory acts directed against Plaintiff for complaining about harassment amounts to retaliation in violation of the law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, JORDAN, respectfully requests this Court to provide the

following equitable and legal remedies:

a.  Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

b.  Order a permanent injunction prohibiting Defendant from further acts of sexual discrimination and sexual harassment.

c.  Award Plaintiff, JORDAN, all costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

d.  Award Plaintiff, JORDAN, a judgment against Defendant for reinstatement, front pay, backpay and other compensatory damages.

e.  Award Plaintiff prejudgment interest.

f.  Grant judgment against Defendant for punitive damages for willful and wanton conduct.

g.  Enter an order requiring Defendant to implement effective steps to eliminate sex discrimination and sexual harassment from Defendant's organizations.

h.  Grant such other and further relief as this Court deems just and proper.


## COUNT III
## COMPLAINT OF KIONA JORDAN FOR
## QUID PRO QUO SEXUAL HARASSMENT AND SEX DISCRIMINATION

58.  Plaintiff incorporates the preceding paragraphs by reference here.


59.  That GREGG explicitly conditioned Plaintiff's enjoyment of the various terms, conditions, and benefits of employment on her submission to his sexual advances. Such terms and conditions of employment include her employment itself and other conditions.

60.     That R & O's conduct in subjecting Plaintiff to inferior terms and conditions of

employment amounts to quid pro quo sexual harassment in violation of the law.

61.     That as a further result of said harassing conduct, Plaintiff was adversely affected

by the various tangible employment actions that she suffered at the hands of R &

O and its agents.

62.     That Defendant is strictly liable for the conduct complained of as the Plaintiff

suffered adverse employment action resulting directly from the harassment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, JORDAN, respectfully requests this Court to provide the following equitable and legal remedies:

a.     Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

b.     Order a permanent injunction prohibiting Defendant from further acts of sexual discrimination and sexual harassment.

c.     Award Plaintiff, JORDAN, all costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

d.     Award Plaintiff, JORDAN, a judgment against Defendant for reinstatement, front pay, backpay and other compensatory damages.

e.     Award Plaintiff prejudgment interest.

f.     Grant judgment against Defendant for punitive damages for willful and wanton conduct.

g.     Enter an order requiring Defendant to implement effective steps to eliminate

sex discrimination and sexual harassment from Defendant's organizations.

h.     Grant such other and further relief as this Court deems just and proper.

Respectfully Submitted,
Kiona Jordan

By: _____
One of Plaintiff's Attorneys

Uche O. Asonye - 6209522
Mark Pando - 6283683
ASONYE & ASSOCIATES
11 South LaSalle Street, Suite 2140
Chicago, Illinois 60603
(312) 795-9110
(312) 795-9114 (Fax)

15

## JURY DEMAND

NOW COMES the Plaintiff by her undersigned attorney, and demands a trial by jury

in the above entitled cause of action.

Respectfully Submitted,
Kiona Jordan

By: _____

One of Plaintiff's Attorneys

Uche O. Asonye - 06209522
Mark Pando - 6283683
Asonye & Associates
11 South LaSalle Street, Suite 2140
Chicago, Illinois 60603
(312) 795-9110
(312) 795-9114 (f)

EEOC Form 16  8 (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To: **Kiona Jordan**<br>**320 Richards Street**<br>**Joliet, IL 60433** | From: **Chicago District Office**<br>**500 West Madison St**<br>**Suite 2800**<br>**Chicago, IL 60661** |

**CERTIFIED MAIL 7003 3110 0004 0947 3255**

☐ *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 21B-2007-00008 | **Armernola P. Smith,**<br>**State & Local Coordinator** | (312) 886-5973 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA must be filed in a federal or state court <u>**WITHIN 90 DAYS**</u> of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

- [X] More than 180 days have passed since the filing of this charge.

- [ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

- [X] The EEOC is terminating its processing of this charge.

- [ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

- [ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

- [ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*John P. Rowe*                                   11/02/07

| Enclosures(s) | **John P. Rowe,**<br>**District Director** | *(Date Mailed)* |

cc:    **R&O**
      **707 West Jefferson**
      **Shorewood, IL 60404**





EXHIBIT
**A**

11/02/2007  09:49  312-814-6251          DHR                    PAGE  09/2(
                                                                 @002/006

# CHARGE OF DISCRIMINATION

| | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | ☐ FEPA  ☒ EEOC | 2007CF0845 |

O7W0907.10

and EEOC

Illinois Department of Human Rights

_State or local Agency, if any_

| NAME(indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Ms. Kiona Jordan | 815-909-8812 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 320 Richards Street | Joliet, IL 60433 | 12/9/1984 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (if more than one list below).

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| R&O | 15+ | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 707 West Jefferson | Shorewood, IL 60404 | Will |

| NAME | TELEPHONE NUMBER (include Area Code) |
|---|---|
| N/A | N/A |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| N/A | N/A | N/A |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER (Specify)

| DATE DISCRIMINATION TOOK PLACE EARLIEST | |
|---|---|
| June 2006 | July 2006 |

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s))

I was hired by R & O on December 7, 2005. From mid-June of 2006 until July of 2006, I have been subjected to verbal sexual harassment. Despite multiple complaints to management at both R & O and Caterpillar, the harassment has continued. In July of 2006, I was also retaliated against for complaining about sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended.

DEPT. OF HUMAN RIGHTS
INTAKE UNIT
SEP 7 2006
BY _____ RECEIVED

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| _signature_  8/2/06  Date  Charging Party (Signature) | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year)  9/2/06 |

EEOC FORM 5 (REV. 1/01)

11/82/2007  89:49    312-814-6251         DHR                    PAGE  18/24

## KIONA JORDAN V. R & O
### Page 2 of charge:

1.    A.    **ISSUE/BASIS**
      1.    Sexually harassed from approximately mid-June of 2006, and continuing until July of 2006.

      B.    **PRIMA FACIE ALLEGATIONS**
      1.    I was hired by Respondent, R&O, as a letter on or about December 7, 2005. R&O placed me at the CATERPILLAR location. During my employment, I was discriminated against because of my sex, female. I was also subjected to sexual harassment by, LOUIS GREGG ("GREGG"), my R&O supervisor. Respondent has failed to take effective corrective action in a timely manner, and has failed to prevent the sexual harassment.

      2.    I believe that I have been discriminated against because of my sex, female, and sexually harassed in that:

            a.    I was a satisfactory and conscientious employee.

            b.    On or around June 15, 2006, on approximately 8 or 9 occasions GREGG made sexually offensive comments to me. For example, GREGG stated the following to me:
                  i.    "I love the way you look.";
                  ii.   "You are very sexy to me."; and
                  iii.  "You need to stop coming to work looking like that."

            c.    After GREGG's first offensive comment to me, I politely told him that I had a boyfriend and that I was not interested. However, GREGG responded, "I understand you have a boyfriend but nobody needs to know about us. I can take you to Chicago and nobody will find out about us." I again told GREGG that I had a boyfriend and that I was not interested. Finally, at the end of that day GREGG said to me, "You do act like you are uncomfortable when I come around so I am going to leave you alone."

_Complainant's Signature_                      9/2/06
                                               _Date_

11/32/2007  09:49    312-814-6251              DHR                    @004/008
08/28/2008 08:18 FAX  3127858114       Asonye & Associates

**KIONA JORDAN V. R&Q**
Page 3 of charge:

d.    On or around June 17, 2006, GREGG said to me, "I see you driving a Mustang, that's a nice looking Mustang. If I was you, I would do whatever I tell you to do if you want to keep it." I asked GREGG, "What is that supposed to mean?" GREGG responded, "You know what I mean." ERIKA WASHINGTON ("WASHINGTON") witnessed GREGG make this comment to me.

e.    On or around June 24, 2006, I asked GREGG if I could leave work early because my babysitter unexpectedly had to leave early and my child would be home alone. GREGG responded, "I wouldn't have had a problem with you leaving early if you would have buttered me up the other day." I told GREGG, "I am serious. I really need to go home." He responded, "You can leave under one condition, you come over to my house when I get off at 11:30 or 12. We can watch x-movies together. I got a lot of movies, especially a lot of x-rated movies that I want you to see." I told GREGG, "No way, I ain't coming over and watching x-rated movies with you!" GREGG responded, "If you come over to my house I can guarantee you will be satisfied and you would end up falling in love with me." I told him again, "I am not coming over to your house, and I have to leave at 8." GREGG said, "Fine then. If you leave at 8 and get written up, don't be mad at me."

f.    Immediately after this incident I walked over to SENECA's "LNU" ("SENECA") work area and told him that GREGG wanted me to come over to his house to watch x-rated movies. SENECA responded, "Is that why he has been coming over here by us? If I was you I would get a tape recorder and record him asking you that."

Complainant's Signature       9/2/06

Date

**KIONA JORDAN V. RAO**
Page 4 of charge:

g.  On the following Monday, on or about June 26, 2006, GREGG asked me, "Why didn't you come over to my house like you said you would?" I told GREGG, "I told you I was not coming over to your house." GREGG responded, "You should be glad that I didn't write you up for leaving." I just walked away from GREGG after he said this.

h.  On or about June 29, 2006, KARISSA JAMES ("JAMES"), WASHINGTON, GREGG, and me were all in a meeting together. In said meeting, GREGG raised his voice and yelled at me, "Kiona, you know you know better than to leave those tickets in the tower. Karissa[JAMES] shouldn't have to tell you what to do, you have been here 7 months! If you don't like what's being said to you, you can be replaced! If you don't like it, just leave. You know where the door is." I was extremely embarrassed by GREGG's conduct toward me during the meeting.

i.  Also on or about June 29, 2006, GREGG asked us to line pieces of wood up against the wall so that the trucks would not mark up the wall. However, when GREGG asked us to do this, he made a sexually offensive comment. GREGG stated, "Kiona and Erika, I need you all to handle my wood.", referring to his penis. While laughing, GREGG then stated, "I'm just playing, but I really do need you to move some wood." JAMES witnessed this and stated to GREGG, "Now Louis, I told you about playing with those girls, you can't play with everybody like that. Don't get mad if one of those girls complains that you are sexually harassing them."

_(signature)_                    9/2/06

Complainant's Signature                    Date

11/02/2007  09:49    312-814-6251    DHR    PAGE  13/24
08/28/2008 08:17 FAX  312/358114    Asonya & Associates    @006/008

**KIONA JORDAN V. R&O**
Page 5 of charges

j.   On approximately June 29, 2006, I complained about GREGG's sexual harassment to LESLIE "MCGINNEST" ("MCGINNEST"), a human resources employee of CATERPILLAR. MCGINNEST stated that she could not help me because GREGG was an R&O employee, and she worked for CATERPILLAR. MCGINNEST then instructed me to take my complaint to the R&O human resources contact, AMANDA "LNU" ("AMANDA").

k.   On or about June 30, 2006, I complained to my other R&O supervisor, RAY ABNER ("ABNER"). I gave ABNER a hand written note that detailed my sexual harassment complaints about GREGG. ABNER responded that he was going to take the complaint to AMANDA from human resources. Together, we walked up to meet with AMANDA.

l.   On or about June 30, 2006, I told AMANDA about GREGG's harassment and ABNER gave her my hand written notes. AMANDA stated to me, "Kiona, I'm very sorry that this happened to you. I am going to get to the bottom of this and find out what's going on."

m.   Shortly after my complaint to AMANDA on June 30, 2006, she called JAMES and SENECA up to her office to discuss my complaint about GREGG's sexually harassing conduct.

n.   After JAMES got back from her meeting with AMANDA, JAMES told me, "I told them how GREGG is extra friendly with you. I did not tell them everything because GREGG would have probably got fired."

o.   After SENECA got back from his meeting with AMANDA, he told me, "I told them everything that you had told me."

p.   To the present, I am not sure if GREGG was disciplined with regards to my sexual harassment complaint.


Complainant's Signature          7/2/06          Date

**KIONA JORDAN V. R&Q**
Page 6 of charge:

**II    A.    ISSUE/BASIS**

1.    Retaliated against for complaining about sexual harassment.

**B.    PRIMA FACIE ALLEGATIONS**

1.    I believe that I have been retaliated against for having openly opposed discrimination in that I was transferred to a physically challenging department.

   a.    I complained about GREGG's sexual harassment to management employees that worked for Respondent. For example, I complained to GREGG, ABNER and AMANDA in June of 2006.

   b.    On or around June 30, 2006, Respondent purportedly investigated my allegations of sexual harassment against GREGG.

   c.    Shortly after I complained, on or around July 05, 2006, I was demoted from the kitter position to the repair position. As a result, my job location changed, and my job class was downgraded from Class III to Class I. Furthermore, as a result of the demotion, I had to work in much dirtier conditions that required a lot of manual labor and heavy lifting. Finally, I was one of only 2 female employees in that entire department. The other female employee was a supervisor and did not have to engage in the same heavy lifting that I was required to do.

   d.    On or around July 7, 2006, I had a meeting KEITH CECIL ("CECIL"), AMANDA, and BOB MCGEE ("MCGEE"), the human resources supervisor. In said meeting, AMANDA stated to me, "Kiona, the investigation is over with. You lied to us. You told us that GREGG said those things, and we have a witness who said you lied to us to get on first shift." I was shocked at what AMANDA stated and asked, "Who is the witness that said I lied?" AMANDA responded, "We can't tell you that. Okay, we are suspending you for 3 days for lying." When you return, you will return to your Class 1 job as Repair.

   e.    I was suspended from work from Friday July 7, 2006, through Tuesday July 11, 2006. I am not aware of any other employees that were suspended for purportedly lying about being sexually harassed.

_____                    _____
Complainant's Signature                     Date

11/02/2007  09:49    312-814-6251        DHR                    ☎ 006/008
08/29/2006 08:18 FAX  3127858114      Asonye & Associates

**KIONA JORDAN V. RAO**
Page 7 of charges

f.    The adverse actions stated above followed my protected activity
within such a period of time as to raise an inference of retaliatory
motivation.

_[signature]_                    9/2/06

Complainant's Signature              Date

_[notary stamp]_

Subscribed and sworn to before me this

2    day of August, 2006.

_[signature]_

Notary Public

## FILING SUIT IN COURT OF COMPETENT JURISDICTION

### PRIVATE SUIT RIGHTS:

This issuance of this Notice of Right to Sue ends EEOC's process with respect to your charge. You may file a lawsuit against the respondent named in your charge within 90 days from the date you receive this Notice. Therefore you should keep a record of this date. Once this 90-day period is over, your right to sue is lost. If you intend to consult an attorney, you should do so as soon as possible. Furthermore, in order to avoid any question that you did not act in a timely manner, if you intend to sue on your own behalf, your suit should be filed well in advance of the expiration of the 90-day period.

You may file your lawsuit in a court of competent jurisdiction. Filing this Notice is not sufficient. A court complaint must contain a short statement of the facts of your case which shows that you are entitled to relief. Generally, suits are brought in the state where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.

You may contact EEOC if you have any questions about your rights, including advice on which court can hear your case, or if you need to inspect and copy information contained in the case file.

A lawsuit against a private employer is generally filed in the U.S. District Court.

A lawsuit under Title VII of the Civil Rights Act of 1964, as amended, against a State agency or a political subdivision of the State is also generally filed in the U.S. District Court.

However, a lawsuit under the Age Discrimination in Employment Act or the Americans with Disabilities Act or, probably, the Equal Pay Act against a State instrumentality (an agency directly funded and controlled by the State) can only be filed in a State court.

A lawsuit under the Age Discrimination in Employment Act or the Americans with Disabilities Act or the Equal Pay Act against a political subdivision of the State, such as municipalities and counties, may be filed in the U.S. District Court.

For a list of U.S. District Courts, please see reverse side.

**IF THE FIRST THREE CHARACTERS OF YOUR EEOC CHARGE NUMBER ARE "21B" AND YOUR CHARGE WAS INVESTIGATED BY THE ILLINOIS DEPARTMENT OF HUMAN RIGHTS (IDHR), REQUEST FOR REVIEWING AND COPYING DOCUMENTS FROM YOUR FILE MUST BE DIRECTED TO IDHR.**

### ATTORNEY REPRESENTATION:

If you cannot afford or have been unable to obtain a lawyer to represent you, the court having jurisdiction in your case may, assist you in obtaining a lawyer. If you plan to ask the court to help you obtain a lawyer, you must make this request of the court in the form and manner it requires. Your request to the court should be made well before the end of the 90-day period mentioned above. A request for representation does not relieve you of the obligation to file a lawsuit within this 90-day period.

### DESTRUCTION OF FILE:

you file suit, you or your attorney should forward a copy of your court complaint to this office. Your file will then be preserved. Unless you have notified us that you have filed suit, your charge file could be destroyed as early as six months after the date of this Notice of Right to Sue.

**IF YOU FILE SUIT, YOU OR YOUR ATTORNEY SHOULD NOTIFY THIS OFFICE WHEN THE LAWSUIT I**