## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| KIONA JORDAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 07 C 6452 |
| | ) | |
| v. | ) | Judge: Coar |
| | ) | |
| R&OAURORA, INC, | ) | Magistrate Judge: Denlow |
| | ) | |
| | ) | <u>Jury Trial Demanded</u> |
| Defendant. | ) | |
| | ) | |

## ANSWER TO COMPLAINT

Defendant, R & O AURORA, INC., by its attorney, John O'Connor of Hubbard & O'Connor, Ltd., answers the Complaint in this matter as follows:

## NATURE OF THE CASE

1.    The cause of action for Plaintiff arises under Title VII of the Civil Rights Act, 42 U.S.C. section 2000e, as amended.

**ANSWER:** Defendant admits that Plaintiff seeks relief under Title VII but denies any violations thereof.

2.    This court has jurisdiction over this matter pursuant to 42 U.S.C. Section 2000e.

**ANSWER:** Defendant admits Paragraph 2.

1

## JURISDICTION AND VENUE

3.      Venue in the Northern District of Illinois is proper. The claim for relief

arose in this state as required by 42 U.S.C. section 2000e.

**ANSWER:** Defendant admits Paragraph 3.


4.      All conditions precedent have been fulfilled by Plaintiff, including the

filing of a Charge of Discrimination with the Equal Employment Opportunity

Commission ("EEOC") of the United States Government, and a receipt of a Right-to-Sue

Letter from the EEOC. (EEOC Charge and Right-to-Sue Letter attached as Exhibit A).

**ANSWER:** Defendant admits that Plaintiff filed a charge of discrimination with the

EEOC and received a right to sue letter from the EEOC.  Defendant denies any other

allegations contained in Paragraph 4.


## PARTIES


5.      Plaintiff is female and a resident of the State of Illinois.

**ANSWER:** Defendant admits the allegations contained in Paragraph 5.


6.      Defendant, R & O AURORA, INC., is duly registered to conduct business

in the State of Illinois.

**ANSWER:** Defendant admits the allegations contained in Paragraph 6.


2

7.    At all times pertinent hereto, Defendant, R & O AURORA, INC., has

engaged in an industry affecting commerce and has had fifteen (15) or more employees

for each working day in each of the twenty (20) or more calendar weeks in the current or

preceding calendar year.

**ANSWER:** Defendant admits the allegations contained in Paragraph 7.

**COUNT I**
**COMPLAINT OF KIONA JORDAN FOR**
**HOSTILE WORK ENVIRONMENT SEXUAL HARASSMENT**

8.    That Plaintiff was hired by R & O as a kitter on December 7, 2005 and

placed to work at R & O's CATERPILLAR location.

**ANSWER:** Defendant admits that Plaintiff was hired on December 7, 2005 and worked

at Defendant's Caterpillar location.  Defendant denies the remaining allegations contained

in Paragraph 8.

9.    That during her employment, Plaintiff was supervised by LOUIS GREGG

("GREGG").

**ANSWER:** Defendant admits that Plaintiff was supervised by Gregg during a period of

her employment with Defendant but denies the remaining allegations contained in

Paragraph 9.

10.    That in his position, GREGG was a supervisory employee as defined by

Title VII.

**ANSWER:** Defendant denies that Title VII defines supervisory employee and denies all other allegations in Paragraph 10 except to admit that Gregg had supervisory duties over Plaintiff.

11.    That Plaintiff was a satisfactory and conscientious employee who performed assigned tasks in an acceptable manner consistent with R & C's standards and regulations.

**ANSWER:** Defendant denies the allegations contained in Paragraph 11.

12.    That while employed by R & O, from approximately mid-June 2006 to July 2006, Plaintiff was subjected to debilitating sexual harassment, inferior, miserable, and illegal terms and conditions of employment because of her sex, female.

**ANSWER:** Defendant denies the allegations contained in Paragraph 12.

13.    That during her employment, GREGG subjected Plaintiff to numerous instances of sexually inappropriate and unwanted conduct, including but not limited to unwelcome and suggestive comments.

**ANSWER:** Defendant denies the allegations contained in Paragraph 13.

14.    That on or about June 15, 2006, on approximately eight or nine occasions, GREGG made sexually offensive comments to me such as, "I love the way you look," "You are very sexy to me," and "You need to stop coming to work looking like that."

**ANSWER:** Defendant denies the allegations contained in Paragraph 14.

4

15.     That after GREGG's first offensive comment, Plaintiff politely told him that she had a boyfriend and was not interested in him. However, GREGG responded, "I understand you have a boyfriend but nobody needs to know about us. I can take you to Chicago and nobody will find out about us." Plaintiff again told GREGG that she had a boyfriend and that she was not interested in him. Finally, at the end of that day, GREGG said to Plaintiff, "You do act like you are uncomfortable when I come around so I am going to leave you alone."

**ANSWER:** Defendant denies the allegations contained in Paragraph 15.

16.     That on or around June 17, 2006, GREGG said to Plaintiff, "I see you driving a Mustang, that's a nice looking Mustang. If I was you, I would do whatever I tell you to do if you want to keep it." Plaintiff then asked GREGG, "What is that supposed to mean?" GREGG responded, "You know what I mean." ERIKA WASHINGTON ("WASHINGTON") was present when GREGG made this comment to Plaintiff.

**ANSWER:** Defendant denies the allegations contained in Paragraph 16.

17.     That on or around June 24, 2006, Plaintiff asked GREGG if she could leave work early because her babysitter unexpectedly had to leave. GREGG responded, "I wouldn't have had a problem with you leaving early if you would have buttered me up the other day." Plaintiff told GREGG, "I am serious. I really need to go home." He responded,. "You can leave under one condition, you come over to my house when I get off at 11:30 or 12. We can watch movies together. I got a lot of movies, especially a lot of

5

x-rated movies that I want you to see." Plaintiff told GREGG, "No way, I ain't coming

over and watching x-rated movies with you!" GREGG responded, "If you come over to

my house I can guarantee you will be satisfied and you would end up falling in love with

me." Plaintiff told him again, "I am not coming over to your house, and I have to leave at

8." GREGG said, "Fine then. If you leave at 8 and get written up, don't be mad at me."

**ANSWER:** Defendant admits that Plaintiff told Gregg that she needed to go home early.

Defendant denies the remaining allegations contained in Paragraph 17.


18.    That immediately after this incident, Plaintiff walked over to SENECA's

work area and told him that GREGG wanted Plaintiff to come over to his house to watch

X-rated movies. SENECA responded, "Is that why he has been coming over here by us?

If I was you I would get a tape recorder and record him asking you that."

**ANSWER:** Defendant denies the allegations contained in Paragraph 18.


19.    That on the following Monday, on or about June 26, 2006, GREGG asked

Plaintiff, "Why didn't you come over to my house like you said you would?" Plaintiff

responded, "I told you I was not coming over to your house." GREGG then stated, "You

should be glad that I didn't write you up for leaving."

**ANSWER:** Defendant denies the allegations contained in Paragraph 19.


20.    That on or about June 29, 2006, during a meeting between KARISSA

JAMES ("JAMES"), WASHINGTON, and GREGG, GREGG raised his voice and yelled

at Plaintiff, "Kiona, you know you know better than to leave those tickets in the tower.

6

Karissa [JAMES] shouldn't have to tell you what to do, you have been here 7 months! If

you don't like what's being said to you, you can be replaced! If you don't like it, just

leave. You know where the door is."

**ANSWER:** Defendant admits that Gregg criticized Plaintiff for her failure to perform

her job but denies the remaining allegations contained in Paragraph 20.


21.    That Plaintiff was extremely embarrassed and humiliated by GREGG's

conduct during the meeting.

**ANSWER:** Defendant denies the allegations contained in Paragraph 21.


22.    That also on or about June 29, 2006, GREGG asked Plaintiff and other

workers to line pieces of wood up against the wall so that the trucks would not mark up

the wall. However, when GREGG gave them said assignment, he made a sexually

offensive comment: "Kiona and Erika, I need you all to handle my wood.", referring to

his penis. While laughing, GREGG then stated, "I'm just playing, but I really do need

you to move some wood." JAMES witnessed this and stated to GREGG, "Now Louis, I

told you about playing with those girls; you can't play with everybody like that. Don't get

mad if one of those girls complains that you are sexually harassing them."

**ANSWER:** Defendant denies the allegations contained in Paragraph 22.


23.    That on approximately June 29, 2006, Plaintiff complained about

GREGG's sexual harassment to LESLIE MCGINNEST, a CATERPILLAR human

resources employee.


7

**ANSWER:** Defendant is without knowledge of information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23.

24.    That MCGINNEST stated that she could not help Plaintiff because GREGG was an R&O employee and she [MCGINNEST] worked for CATERPILLAR.

**ANSWER:** Defendant is without knowledge of information sufficient to form a belief as to the truth of the allegations contained in Paragraph 24.

25.    That MCGINNEST then instructed Plaintiff to take her complaint to the R&O human resources contact, AMANDA "LNU" ("AMANDA").

**ANSWER:** Defendant is without knowledge of information sufficient to form a belief as to the truth of the allegations contained in Paragraph 25.

26.    That on or about June 30, 2006, Plaintiff complained to another R&O supervisor, RAY ABNER ("ABNER"). Plaintiff also gave ABNER a hand written note that detailed her sexual harassment complaints about GREGG. ABNER responded that he would take the complaint to AMANDA at R & D's human resources. Together, they walked up to meet with AMANDA.

**ANSWER:** Defendant admits the allegations contained in Paragraph 26.

27.    That on or about June 30, 2006, Plaintiff brought GREGG's actions to the attention of AMANDA. ABNER also gave her Plaintiff's hand written notes. AMANDA

8

stated to Plaintiff, "Kiona, I'm very sorry that this happened to you. I am going to get to the bottom of this and find out what's going on."

**ANSWER:** Defendant admits that Plaintiff made a complaint of alleged sexual harassment regarding Gregg to Amanda Olson and that Olson advised Plaintiff that she would investigate the allegations. Defendant denies the remaining allegations contained in Paragraph 27.

28.    That shortly after Plaintiff's complaint to AMANDA on June 30, 2006, AMANDA called JAMES and SENECA up to her office to discuss Plaintiff's complaint.

**ANSWER:** Defendant admits that she interviewed James and Seneca to discuss Plaintiff's allegations of sexual harassment after Plaintiff made the complaint. Plaintiff denies the remaining allegations contained in Paragraph 28.

29.    That after JAMES returned from her meeting with AMANDA, JAMES told Plaintiff, 'I told them how GREGG is extra friendly with you. I did not tell them everything because GREGG would have probably got fired."

**ANSWER:** Defendant is without knowledge of information sufficient to form a belief as to the truth of the allegations contained in Paragraph 29.

30.    That after SENECA returned from the meeting with AMANDA, he stated to Plaintiff that "I told them everything that you had told me."

9

**ANSWER:** Defendant is without knowledge of information sufficient to form a belief as to the truth of the allegations contained in Paragraph 30.

31.     That ultimately and as a result of her complaint of sexual harassment, Plaintiff was transferred, suspended and demoted, thus placing her in a position in which she was worse off for having complained.

**ANSWER:** Defendant denies the allegations contained in Paragraph 31.

32.     That Defendant's response to Plaintiff's complaint of sexual harassment is per se negligent because said response had the effect of placing Plaintiff in an inferior position thereafter.

**ANSWER:** Defendant denies the allegations contained in Paragraph 32.

33.     That R & O failed to take reasonable corrective action to prevent the harassment Plaintiff suffered as a result of GREGG's conduct.

**ANSWER:** Defendant denies the allegations contained in Paragraph 33.

34.     That R & O could have prevented said sex discrimination if it had implemented an effective anti-sex discrimination policy.

**ANSWER:** Defendant denies the allegations contained in Paragraph 34.

35.     That R & O could have prevented said sexual harassment if it had implemented an effective anti-sexual harassment policy.

**ANSWER:** Defendant denies the allegations contained in Paragraph 35.

36.     That R & O condoned sexual harassment and failed to maintain a
harassment-free work environment by failing to provide adequate training, counseling,
and instructions to their employees and officers, especially GREGG, with respect to
sexual harassment of female employees.

**ANSWER:** Defendant denies the allegations contained in Paragraph 36.

37.     That R & O condoned sexual harassment and failed to maintain a
harassment-free work environment by failing to employ an effective anti-sexual
harassment policy with respect to their employees, especially GREGG.

**ANSWER:** Defendant denies the allegations contained in Paragraph 37.

38.     That R & O failed to maintain a harassment-free work environment by
failing to take effective corrective action against GREGG after R & O became aware that
GREGG was engaging in unwelcome sexual conduct toward Plaintiff.

**ANSWER:** Defendant denies the allegations contained in Paragraph 38.

39.     That as a result of these failures by R & O, GREGG used his authority as
a supervisor to force his unwelcome sexual advances and offensive conduct upon
Plaintiff.

**ANSWER:** Defendant denies the allegations contained in Paragraph 39.

11

40.    That R & O's treatment of Plaintiff was motivated by evil motive and intent, and was recklessly and callously indifferent to Plaintiff's federally protected rights.

**ANSWER:** Defendant denies the allegations contained in Paragraph 40.

41.    That the sex discrimination and sexual harassment Plaintiff was subjected to by the hands of R & O, their agents, representatives and employees was persistent in nature, unwelcome, extremely offensive, humiliating, and effective in creating a hostile and intimidating work environment for Plaintiff.

**ANSWER:** Defendant denies the allegations contained in Paragraph 41.

42.    That said continuous and persistent sex discrimination and sexual harassment adversely affected the terms and conditions of Plaintiff's employment with R & O.

**ANSWER:** Defendant denies the allegations contained in Paragraph 42.

43.    That as a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered the indignity of discrimination, the invasion of her right to be free from discrimination, and great humiliation which has manifested in physical illnesses and emotional stress on the relationships between Plaintiff and her friends, family, and colleagues.

**ANSWER:** Defendant denies the allegations contained in Paragraph 43.

44.     That as a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about her future and her ability to support herself, shameful embarrassment among her friends, colleagues, and co-workers, damage to her reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of life.

**ANSWER:** Defendant denies the allegations contained in Paragraph 44.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, JORDAN, respectfully requests this Court to provide the following equitable and legal remedies:

a.  advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

b.  Order a permanent injunction prohibiting Defendant from further acts of sexual discrimination and sexual harassment.

c.  Award Plaintiff, JORDAN, all costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

d.  Award Plaintiff, JORDAN, a judgment against Defendant for reinstatement, front pay, backpay and other compensatory damages.

e.  Award Plaintiff-prejudgment interest.

f.  Grant judgment against Defendant for punitive damages for willful and wanton conduct.

13

g. Enter an order requiring Defendant to implement effective steps to eliminate sex discrimination and sexual harassment from Defendant's organizations.

h. Grant such other and further relief as this Court deems just and proper.

**ANSWER:** Defendant denies that Plaintiff is entitled to any of the requested relief and denies that she is entitled to any relief whatsoever.

**COUNT II**

**COUNT III - RETALIATORY TRANSFER, SUSPENSION AND DEMOTION**

45.    Plaintiff incorporates the preceding paragraphs by reference here.

**ANSWER:** Defendant incorporates the preceding answers by reference herein.

46.    That Plaintiff complained about GREGG's sexual harassment to Defendant's management employees.

**ANSWER:** Defendant admits that Plaintiff made allegations of sexual harassment against Gregg to Defendant's management employees. Defendant denies the remaining allegations contained in Paragraph 46.

47.    That on or around June 30, 2006, Defendant purportedly investigated Plaintiff's allegations of sexual harassment against GREGG.

**ANSWER:** Defendant admits that it investigated Plaintiff's allegations of sexual harassment against Gregg beginning on June 30, 2006. Defendant denies the remaining allegations contained in Paragraph 47.

48.    That on or around July 7, 2006, Plaintiff had a meeting with CECIL

("CECIL"), AMANDA, and BOB MCGEE ("MCGEE"), the human resources

supervisor.

**ANSWER:** Defendant denies that Bob McGee was the human resources supervisor.

Defendant admits the remaining allegations contained in Paragraph 48.

49.    That in said meeting, AMANDA stated to Plaintiff, "Kiona, the

investigation is over with. You lied to us. You told us that GREGG said these things, and

we have a witness who said you lied to us to get on first shift."

**ANSWER:** Defendant admits that Amanda advised Plaintiff that the investigation was

completed and that people had advised the company that Plaintiff had made the

allegations to get her shift changed. Defendant denies the remaining allegations

contained in Paragraph 49.


50.    That Plaintiff then asked, "Who is the witness that said I lied?" AMANDA

responded, "We can't tell you that. Okay, we are suspending you for 3 days for lying."

When you return, you will return to your Class I job as Repak.

**ANSWER:** Defendant admits that Plaintiff asked for the identity of witnesses and that

Amanda declined to identify witnesses and admits that Plaintiff was advised that she was

being suspended for three days and would be working in repak following her return.

Defendant denies the remaining allegations contained in Paragraph 50.

15

51.     That Plaintiff was suspended from work from Friday July 7, 2006, through Tuesday July 11, 2006.

**ANSWER:** Defendant admits that Plaintiff was given a three-day suspension from July 10-12, 2006 but was permitted to work on July 12, 2006. Defendant denies the remaining allegations contained in Paragraph 51.

52.     That Plaintiff was also transferred to a more physically challenging department.

**ANSWER:** Defendant admits that repak position is more physically challenging than the position of kitter.

53.     That Plaintiff was demoted from the kitter position to the repak position.

**ANSWER:** Defendant denies the allegations contained in Paragraph 53.

54.     That as a result, Plaintiff's job location changed, and her job class was downgraded from Class III to Class I.

**ANSWER:** Defendant admits that Plaintiff's job location changed and that repak is a different class than kitter. Defendant denies the remaining allegations contained in Paragraph 54.

55.     That as a further result of the demotion, Plaintiff had to work in much dirtier conditions that required a lot of manual labor and heavy lifting. Finally, Plaintiff

16

was one of only two female employees in that entire department. The other female

employee was a supervisor and did not have to engage in the same heavy lifting that

Plaintiff was required to do.

**ANSWER:** Defendant admits that the repak position required manual labor and lifting,

is not as clean as the "clean room" in which the position of kitter worked and that

Plaintiff was one of two female employees performing the repak position. Defendant

denies the remaining allegations contained in Paragraph 55.


56.    The adverse actions stated above followed Plaintiff's protected activity

within such a period of time as to raise an inference of retaliatory motivation.

**ANSWER:** Defendant denies the allegations contained in Paragraph 56.


57.    That the conduct alleged above by Defendant as well as other inferior and

retaliatory acts directed against Plaintiff for complaining about harassment amounts to

retaliation in violation of the law.

**ANSWER:** Defendant denies the allegations contained in Paragraph 57.


## **PRAYER FOR RELIEF**


WHEREFORE, Plaintiff, JORDAN, respectfully requests this Court to provide
the following equitable and legal remedies:

a.  Advance this case on the docket, order a speedy hearing at the earliest practicable
    date and cause this case to be expedited in every possible way.

b.  Order a permanent injunction prohibiting Defendant from further acts of sexual
    discrimination and sexual harassment.


17

c.  Award Plaintiff, JORDAN, all costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

d.  Award Plaintiff, JORDAN, a judgment against Defendant for reinstatement, front pay, backpay and other compensatory damages.

e.  Award Plaintiff prejudgment interest.

f.  Grant judgment against Defendant for punitive damages for willful and V wanton conduct.

g.  Enter an order requiring Defendant to implement effective steps to eliminate sex discrimination and sexual harassment from Defendant's organizations.

h.  Grant such other and further relief as this Court deems just and proper.

**ANSWER:**  Defendant denies that Plaintiff is entitled to any of the requested relief and denies that Plaintiff is entitled to any relief whatsoever.

**COUNT III**
**COM PLAINT OF KIONA JORDAN FOR**
**QUID PRO QUO SEXUAL HARASSMENT AND SEX DISCRIMINATION**

58.  Plaintiff incorporates the preceding paragraphs by reference here.

**ANSWER:**  Defendant incorporates by references its answers to the preceding paragraphs.

59.  That GREGG explicitly conditioned Plaintiff's enjoyment of the various terms, conditions, and benefits of employment on her submission to his sexual advances. Such terms and conditions of employment include her employment itself and other conditions.

**ANSWER:**  Defendant denies the allegations contained in Paragraph 59.

18

60.    That R & O's conduct in subjecting Plaintiff to inferior terms and conditions of employment amounts to quid pro quo sexual harassment in violation of the law.

**ANSWER:** Defendant denies the allegations contained in Paragraph 60.

61.    That as a further result of said harassing conduct, Plaintiff was adversely affected by the various tangible employment actions that she suffered at the hands of R & O and its agents.

**ANSWER:** Defendant denies the allegations contained in Paragraph 61.

62.    That Defendant is strictly liable for the conduct complained of as the Plaintiff suffered adverse employment action resulting directly from the harassment.

**ANSWER:** Defendant denies the allegations contained in Paragraph 62.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, JORDAN, respectfully requests this Court to provide the following equitable and legal remedies:

a.   Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

b.   Order a permanent injunction prohibiting Defendant from further acts of sexual discrimination and sexual harassment.

c.   Award Plaintiff, JORDAN, all costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

19

d.  Award Plaintiff, JORDAN, a judgment against Defendant for reinstatement, front pay, backpay and other compensatory damages.

e.  Award Plaintiff prejudgment interest.

f.  Grant judgment against Defendant for punitive damages for willful and wanton conduct.

g.  Enter an order requiring Defendant to implement effective steps to eliminate sex discrimination and sexual harassment from Defendant's organizations.

h.  Grant such other and further relief as this Court deems just and proper.

**ANSWER:**  Defendant denies that Plaintiff is entitled to the relief requested and denies that Plaintiff is entitled to any relief whatsoever.

## AFFIRMATIVE DEFENSES

1.  Defendant had in place reasonable measures to prevent and remedy sexual harassment and acted reasonably in preventing and remedying any harassment and Plaintiff failed to reasonably utilize said measures or otherwise avoid harm.

2.  To the extent Plaintiff has suffered any damages, she has failed to mitigate her damages.

3.  Plaintiff is barred from recovery by the doctrine of unclean hands.

4.  Defendant would have taken the same actions toward Plaintiff absent discrimination or retaliation.

WHEREFORE, Defendant respectfully requests that this Court enter an order in its favor and against Plaintiff and deny Plaintiff any remedy or relief whatsoever and award to Defendant its costs and attorney's fees.

Respectfully submitted,

R & O AURORA, INC.
Defendant

_____
Attorney for Defendant

John O'Connor
Elizabeth Hubbard
Brian Ekstrom
Hubbard & O'Connor, Ltd.
900 West Jackson Boulevard
Six West
Chicago, Illinois 60607
(312) 421.5960

City of Chicago
COMMISSION ON HUMAN RELATIONS
740 N. Sedgwick, 3rd Floor
Chicago, IL 60610
(312) 744-4111 [Voice]
(312) 744-1081 [Facsimile] / (312) 744-1088 [TTY]
www.cityofchicago.org/HumanRelations

IN THE MATTER OF

|  |  |  |
|---|---|---|
| BRENDA MOORE | ) | |
| COMPLAINANT, | ) | |
| AND | ) | Case No. 07-E-24 |
| | ) | |
| CITY OF CHICAGO AND TROY CLINOY | ) | |
| RESPONDENT. | ) | |

## APPEARANCE OF ATTORNEY

The undersigned enters his/her appearance as attorney for:

(X) Complainant/s  (___) Respondent/s

Name of Each Party/Parties Represented:  Brenda Moore

Name of Attorney Elizabeth Hubbard

Firm Name  Hubbard & O'Connor, Ltd.

Firm Address  900 W. Jackson Blvd, Suite 6 West

City  Chicago                State  IL   Zip Code 60607

Telephone (312) 421-5960

Fax (if any) (312) 421-5310

(___) I am not a member of the bar in the State of Illinois and I hereby request to be allowed to practice before the Commission pursuant to Regulation 270.330.

Signature _Elizabeth Hubbard_

Date 23 January 2008

Apprnc-Atty 4-01