## APPENDIX

## TABLE OF CONTENTS

*Exhibits*

1. Jordan Exh. 1 - Jordan application for employment

2. Olson Exh. 2 - R&O Sexual Harassment Policy

3. Jordan Exh. 3 - Jordan receipt of policy manual

6. Jordan Exh. 6 - Jordan memo re Nick Close – 12/16/05

8A. Saltzman Exh. 8A - Jordan wage change request form – 1/23/06

13. Jordan Exh. 13 - Cecil 5/2/06 notes re Plaintiff's accusation that she was transferred to night shift due to her race

14. Jordan Exh. 14 - CF 5/2/06 Saltzman re Plaintiff saying she was shifted b/c black

15. Jordan Exh. 15 - CF 3/3/06 Cecil re Jordan talk re warning

18. Olson Exh. 18 - Olson 5/10/06 notes regarding Jordan shift change

19. Olson Exh. 19 - Employee warning notice Lewis Gregg – 7/3/06

19A. Olson Exh. 19A - Olson 6/30/06 notes regarding Jordan's complaint on Lewis Gregg

20. Olson Exh. 20 - CF 7/5/06 Dillon re Plaintiff setting up Gregg

21. Olson Exh. 21 - Olson 6/7/06 notes re determination to suspend Plaintiff without pay

22. Olson Exh. 22 - Olson notes on conversation with Plaintiff re her suspension and handling of Gregg's discipline

23. Olson Exh. 23 - CF 7/9/06 Witness 1, Constance Daniels re false claims against Gregg

24. Olson Exh. 24 - CF 7/6/06 Witness 2, Demetria Jenkins re Plaintiff's intention to return to 1st shift

28. Jordan Exh. 28 - EEOC Jordan charge 9/2/06

31. Jordan Exh. 31 - Transcription of Plaintiff's handwritten notes on Gregg, handwritten note, and transmittal email from Plaintiff's counsel

37. Olson Exh. 37 - Employee warning notice Lewis Gregg – 7/3/06

38. Olson 6/30/06 notes "Lewis Gregg write-up"

40. Jordan Exh. 40 - 6/26/06 Employee change form – Gregg to Supervisor

51. Jordan Exh. 51 - Jordan EEOC charge against Kemlite 11/4/05

56. Olson Exh. 56 - Defendant's Answer to Complaint

59. Olson Exh. 59 - Defendant's Answers to Plaintiff's First Set of Interrogatories Directed to Defendant

60. Lewis Gregg termination notice

## *Excerpts from Deposition Transcripts*

A. Olson

B. Saltzman

C. Jordan

# EXHIBITS 1 through 60

# Jordan Exhibit 1

## Jordan application for employment

# APPLICATION FOR EMPLOYMENT

000799
C00001

**We practice At-Will to the fullest extent of state law.**                    **Date** ___/___/___

NOTICE: Applicant should read the following information carefully before filling out any of the questions in this form. Title VII of the Civil Rights Act of 1964, as amended, prohibits discrimination in employment because of race, age, color, sex, religion, national origin, handicap or Vietnam Veteran status.

Name: Jordan    King    Michelle                    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
      Last     First    Middle                    Social Security Number

320 Richard st                    Joliet    IL    60433
Present Address:    Street                    Apt. #            City    State    Zip

Permanent Address (if different than above)
(815) 723-7833    (815) 723-7833
Daytime Telephone        Evening Telephone

Are you 18 years or older? Yes (O) No O
If no, state your birthday: _____

Do you have the legal right to work in the United States? (Yes) O    No O

Have you ever been convicted of a felony? Yes O (No) O
*(Some convictions may be relevant if related to proposed job but is not a bar to employment.)*
If yes, please explain: _____

## EMPLOYMENT DESIRED

Position applying for: Open                    Date you can start: 11/22/05

Type of employment desired?    Full-time (O)    Part-time O    Summer O

Previously employed with this company? (Yes) O    No O

Who referred you to this company?    Employment Agency O    Newspaper O    (Walk-in O)    Other O _____

If other, please explain: Relative

Please list any friends or relatives working here: Paul Harris, Cornelia Harris

## MILITARY/GOVERNMENT SERVICE

Branch of Service: _____    Date of Discharge: ___/___/___    Rank Last Held: _____

## SPECIAL SKILLS OR INTEREST _____

## EDUCATION HISTORY

| High School (or G.E.D.) (name & address) Jefferson | GPA | Graduate? | Major Course of Study |
|---|---|---|---|
| Joliet Central Campus | 3.5 | Yes (O) No O | Basic, math, English Science |
| College (name & address) | GPA | Graduate? | Major Course of Study |
| IADT IN State Street | | Yes O No O | Fashion Design Computer 3D |
| Graduate School (name & address) | GPA | Graduate? | Major Course of Study |
| | | Yes O No O | |

## EMPLOYMENT HISTORY

Are you currently employed?    Yes O (No O)    May we contact your previous employer? (Yes O)    No O

**Please list your last three (3) employers, including military. Start with present job.**

Employer: Kemlite/Manor    Address: 3334 Amos St

Telephone: (815) 725-0124    Supervisor's Name: Wanda

Dates Employed: From Aug 15 05    To Oct 14 05    Reason for Leaving: Laid off

Job Title: Production Worker    Job Salary: $8.50    Ending: 8.50

Group O Companies

000002

Employer: Empress Casino    Address: Empress Rd
Telephone: (815) 782 925-2700    Supervisor's Name: Jori
Dates Employed: From Nov 19 04 To Dec 27 04    Reason for Leaving: School
Job Title: Hotel Attendant    Job Salary: $8.50    Ending: 8.50

Employer: C.A.T Logistics    Address: 2700 mcdug qt
Telephone: 815 Not working #    Supervisor's Name: Janice Abott
Dates Employed: From April 08 To Oct 04    Reason for Leaving: Job closing
Job Title: Picker/Packing Production    Job Salary: $11.25    $ Ending: 11.50

## REFERENCES List names of three (3) persons to whom you are not related. Must have known at least one (1) year.

| Name | Occupation | Telephone Number | Years Known |
|------|-----------|------------------|-------------|
| Leisha Newland | Homemaker | (815) 727-1425 | 8 yrs |
| Geraldine Gray | Supervisor | (630) 329-4313 | 5 yrs |
| Bishop Robert Sanders | Pastor | (815) 722-1647 | 21 yrs |

## RELEASE OF INFORMATION

Because of the nature of the business, it is sometimes necessary to verify background information. Please read the following release statements:

1. <u>Consent to Conduct Background Investigation.</u> I _Kiona Jordan_ (print applicant's name) give my permission to your company to verify all information contained on my application. I understand that my previous employers can be contacted, as well as the individuals I listed as references, and it may be necessary to obtain access to relevant information. If a former employer will not release reference information directly, I agree to personally request such information.

2. <u>Agreement to Furnish a Copy of Transcripts.</u> I agree to furnish a copy of my official college transcripts. I certify that the facts contained in this application are true and complete to the best of my knowledge. I understand that any falsified information contained on this application will be grounds for dismissal. I agree that either party may terminate the employment relationship, with or without cause, at any time for any reason. I also agree to the above "Release of Information" and authorize your company to perform all necessary background investigations. I further agree that my employment is conditional on the results of my employment physical (if such physical is required) and all reference checks, and that I am not considered an employee until and only if I am hired by the Company.

Applicant Signature _Kiona Jordan_    Social Security # _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_    Date _11/21/05_

## FOR OFFICE USE ONLY

Hired:  No ○   Yes ○    Starting Date: ___/___/___    Salary: _____   Per. Hr.: _____

Department: _____    Job Title: _____    Condition of Employment: _____

Approved by: _____

Signature                                         Title                                    Date ___/___/___

Group O Companies

000003

Name **Kiana Jordan**                           Date **11/21/05**

000800

1.    Do you have any experience driving a forklift?  (Yes)  No

2     What type of forklifts do you know how to drive?

**Sit down / Stand up**

3     How many years of experience do you have driving sit down forklifts?  **1 yr**

      How many years of experience do you have driving stand-up forklifts?  **6 mons**

4.    Are you able to lift a minimum of 40lbs?  (Yes)  No

5.    Do you have computer skills?  (Yes)  No

      If yes, what programs do you know and use?

**Word / excel**

6.    Do you like working inside or outside?  (Inside)  Outside

7.    Do you know how to operate heavy equipment?   Yes  (No)

      What types of equipment?

8.    Do you have any problems working overtime?   Yes  (No)

      Weekends?   Yes  (No)

      If yes, please explain.

000004

9.   How many days did you miss on your previous job?   _None_

10.  Do you have reliable transportation?   (Yes)  No

11.  What rate of pay are you expecting? $8.50 - 9.00

12.  What shift do you want to work?   3rd - 1st or 2nd

13.  Are you a team player?   (Yes)  No

     Please explain what being a team player means to you?

A Team Player is a person willing to get the
job Done at all cost their there is No I in Team
so everyone has to do there Part as Well as helping others
To Get the job done in a safe as Well as accurate manner

14.  Why do you think we should hire you?
because I am a Team Player Im willing
to do what I have to to get my job done Im
a very dependable Person as Well as a nice people
person and Always Ready to lend a helping hand

_K____ Jordon_

**Applicant Signature**

# Olson Exhibit 2

# R&O Sexual Harassment Policy

000011

## b.  Sexual Harassment

"R & O Specialties" believes that you should be afforded the opportunity to work in an environment free of sexual harassment. Sexual harassment is a form of misconduct that undermines the employment relationship. No "R & O Specialties" employee, either male or female, should be subjected verbally or physically to unsolicited and unwelcome sexual overtures or conduct.

Sexual harassment does not refer to occasional compliments of a socially acceptable nature. It refers to behavior that is not welcome, that is personally offensive, that debilitates morale and, therefore, interferes with work effectiveness.

Behavior that amounts to sexual harassment may result in disciplinary action, up to and including dismissal.

"R & O Specialties" has adopted, and its policy is based on, the definition of sexual harassment set forth by the Equal Employment Opportunity Commission (EEOC). The EEOC defines sexual harassment as unwelcome sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature when:

(1) Submission to such conduct is made either explicitly or implicitly a term or condition of your employment;

(2) Submission to or rejection of such conduct by you is used as the basis for employment decisions affecting you; or

(3) Such conduct has the purpose or effect of unreasonable interfering with your work performance or creating an intimidating, hostile or offensive working environment.

"R & O Specialties" wants you to have a work environment free of sexual harassment by "R & O Specialties", by "R & O Specialties" management personnel, by your coworkers and by others with whom you must interact during your work for "R & O Specialties".

If you experience or witness sexual harassment in the workplace, report it immediately to the Manager of Human Resources. If that individual is the person who is harassing you, you may approach any other member of "R & O Specialties" management with whom you feel comfortable. All allegations of sexual harassment will be quickly investigated. To the extent possible, your confidentiality and that of any witnesses and the alleged harasser will be protected against unnecessary disclosure. When the investigation is completed, you will be informed of the outcome of that investigation.

"R & O Specialties" will not permit employment-based retaliation against anyone who brings a complaint of sexual harassment or who speaks as a witness in the investigation of complaint of sexual harassment.

EXHIBIT

2

0000004

# Jordan Exhibit  3

## Jordan receipt of policy manual

000005

000770

# Notice & Receipt

The policies in this Manual are considered guidelines. R & O Specialties, Inc., at its option, may change, delete, suspend or discontinue any part or parts of the policies in this Manual at any time without prior notice. Employees shall not accrue eligibility for any benefits, rights, or privileges beyond the last day worked. No one other than the President of R & O Specialties, Inc. may alter or modify any of the policies in this Manual. No statement or promise by a supervisor, manager, or department head may be interpreted as a change in policy nor will it constitute an agreement with an employee.

R & O Specialties's handbook is intended only as an explanation of its employment practices, policies, benefits, and a general guide to working for R & O Specialties. The handbook does not represent contractual terms of employment. Despite anything that you may read into the handbook, employment at R & O Specialties is strictly at will.

This manual replaces all other previous manuals for all R & O Specialties, Inc. as of December 1994.

I have read the above notice. I further understand that employment with R & O Specialties is terminable by either party with or without cause at any time and that employment is for an indefinite period, unless terminated by either party. My signature below acknowledges my reading and understanding of this Notice & Receipt.

_Kiana Jordan_
**Employee's Printed Name**

_____
**Position**

_Kiana Jordan_
**Employee's Signature**

_Dec 7, 2005_
**Date**

_Robert Garvin_
**Manager's Signature**

_12-7-05_
**Date**

# Jordan Exhibit  6

## Jordan memo re Nick Close – 12/16/05

002/008

000066

# CONVERSATION FORM

Date of Conversation: 10/16/05

Person Completing Form: Kronie Jordan    Title: Production

Person(s) Involved: marty    Title: Production

Nick close    Title: Production

_____    Title: _____

_____    Title: _____

_____    Title: _____

Witness to Conversation: marty    Title: _____

Details of Conversation: ~~strikethrough~~

Fred came to drop off our parts
So then he put some parts on my
cart in some parts on his carts
Nick just goes off in yells these
arent my parts these are yours
so I said the might have put the
wrong name on by accident so
he yells No you did this on purpose
I kept telling him I didnt do it
it was a mistake with one of the
People at the computer so He Kept getting
in my face saying I'm telling Ray I'm
telling Ray you trying to get me in
trouble so I just ignored him my
aunt came over and I told her what
was going on she said Just Keep asking for
help eventually stop when she left he
goes on to say yeah thats how you
niggers do when he said that I was so
shocked to hear him say that I was never
so humilated in my life my feelings
fell. So humilated in my life my feelings

000067

were so hurt that he could down me and blame his anger and madness on my Race I come to work everyday ontime I do my job in a accurate in safe manner and to be called a Nigger made me feel like I wanted to just craul in a hole in never come out what I heard was just plain ignorance then to hear that he said things previously about blacks mad matters 10 times worse I can tolerate many of things but to have someone call me a Nigger a Name many of blacks died for just blew me away this is something I can forgive him for because I am a christian Woman I do believe in forgiving but forgetting is going to be the hardest thing to get through I didn't want No one to loose there Job because there own ignorance let alone another persons Skin color I just wish this would have never happend but how the bosses handle the situation makes me feel alot better about my self I didn't know a Job cared So much about its employees but they prove that they are serious in will not tolerate this kind of behavior and I command them on their actions in how they handle my situation.

Kiona

## Saltzman Exhibit 8A

# Jordan wage change request form – 1/23/06

000019

CLASS 3
$10. $13

000780

# WAGE CHANGE REQUEST

Employee Name: KIONA JORDAN

Effective Date: JAN 23, 2006

Reason For Change: CLASS CHANGE TO CLASS 3

Old Rate: $9.00 ✓

New Rate: $10.00

Approval Signatures:

Manager: Don Chapman

General Manager: Bob McGrew 1/13

Payroll Manager: 1/19/06

EXHIBIT
8A

## Jordan Exhibit 13

Cecil 5/2/06 notes re Plaintiff's accusation that she was transferred to night shift due to her race

000059

5/2/06

Today Caterpillar management informed us that we had to restructure our staff in the kitting department. They instructed us to put three first shift people on night shifts effective Monday 5/8/06. Supervisor Ray Ebner informed Operation Manager Bob McGee and myself that the three employees would be Kiona Jordan, Maria Reyes, and Erica Washington. None were happy about the move however Kiona stated that it was unfair. Later in the morning she contacted Mike Saltzman in our HR office stating that she felt she was being singled out due to her race. Mike contacted us and we called him over to discuss as a group. We decided that the moves we made were in the best interest of our company and our customer. We then called all three of them upstairs and I explained to them that the moves we did were going to be in effect on the date directed to us and that down the road if a first shift position became available we would consider them. Kiona became upset and began yelling at Ray that he "is a racist" and that he was picking on her due to her race. I told her to calm down. Once she had herself in control I told her that if she felt that this was the case it is her right as an employee to file a formal complaint but I would not tolerate her speaking to a member of my staff in such a manner. She began crying again and brought up a situation that happened to her some months back when an employee called her a nigger to her face. I reminded her that I myself separated that employee for this and that if I felt any indication that Ray was a racist that he would not be working for me as we take such matters seriously. She then left the room and went back to work.

Keith Cecil
Project Manager

Δ π EXHIBIT ___13

Deponent_____

Date_____ Rptr._____
WWW.DEPOBOOK.COM

## Jordan Exhibit 14

CF 5/2/06 Saltzman re Plaintiff saying she

was shifted b/c black

000060

# CONVERSATION FORM

Date of Conversation: 5/2/2006

Person Completing Form: Mike Saltzman          Title: HR Assistant

Person(s) Involved:     Kiona Jordan           Title: Kitter

                                               Title:

                                               Title:

                                               Title:

                                               Title:

                                               Title:

Witness to Conversation:                       Title:

Details of Conversation: Kiona Jordan called me this morning to complain that her supervisor, Ray Ebner, is moving her off of 1st shift to 2nd and that due to requirements at home and conflicting schedules, she will not be able to work 2nd shift. I told her that employees get moved to different areas and/or placed on different schedules all the time and they're told that when they start. She asked, "Well, why me? Why am I being moved?" I told her that management moves employees for all sorts of reasons, but that I didn't specifically know why she was being moved. I asked Kiona if she had spoken with Ray or Keith Cecil, the Project Manager, about her situation, to which she replied that she had talked to Ray, but not Keith. So I directed her to contact Keith. She then went on to ask me, "What if I think that I'm being moved because I'm black?" I told her that would be a different story altogether and that I would call Ray and find out why he's moving her and, if need be, speak with Keith, as well, which I did. I went to the plant and sat down with Ray, Keith, and Bob McGee, the Operations Manager, to talk about the move and all three managers informed me that Caterpillar had requested they move three employees off of 1st shift because there are too many. I was told they had to move three employees and they decided to move Kiona to 2nd, Maria Reyes to 3rd, and Erica Washington to 2nd and this was strictly a management decision, nothing more.

## Jordan Exhibit 15

# CF 3/3/06 Cecil re Jordan talk re warning

Mar 06 2006 8:44AM    HP LASERJET FAX

000061

# CONVERSATION FORM

Date of Conversation: **3-3-06**

Person Completing Form: **KEITH COOL**    Title: **MANAGER**

Person(s) Involved: **KEONA JORDAN**    Title: **KITTER**

_____    Title: _____

_____    Title: _____

_____    Title: _____

_____    Title: _____

Witness to Conversation: **MIKE SALTZMAN**    Title: **HR**

Details of Conversation: KEONA WAS GIVEN A WRITTEN WARNING LAST WEEK FOR POOR JOB PERFORMANCE DUE TO COMPLAINTS FROM THE CUSTOMER (GINA SLUGAR, MLAT). I GAVE HER THE WRITE UP MYSELF AND THOROUGHLY EXPLAINED IT TO HER. AFTER SHE CHECKED "AGREE" TO THE WRITE UP AND SIGNED IT SHE SHOOK MY HAND AND THANKED ME FOR TRYING TO GUIDE HER IN THE RIGHT DIRECTION. THE NEXT DAY SHE STOPPED ME WITH A TEN PAGE LETTER SAYING THAT SHE FELT THE WRITE UP WAS UNFAIR, THAT GINA HAS A PERSONAL VENDETTA TOWARDS HER AND HER AUNT CORNELIA HARRIS WHO ALSO WORKS IN KITTING. HER LETTER MENTIONED HOW SHE HAD SUED HER LAST PLACE OF EMPLOYMENT FOR "BLOWING OFF" ISSUES THAT SHE HAD BROUGHT TO THEM. MIKE AND MYSELF SAT DOWN WITH HER AND ASKED HER WHAT SHE WAS LOOKING FOR IN THIS SITUATION. WE CAME TO FIND THAT SHE FEELS GINA IS OUT TO GET HER AND THAT GINA MAKES COMMENTS THAT ARE UNPROFESSIONAL ABOUT OUR WORKERS TO CAT EMPLOYEES AS WELL AS COMMENTS ABOUT OUR SUPERVISOR RAY LINDLEY IN KITTING. I TOLD HER THE BEST I COULD DO WAS INFORM GINA'S BOSS ABOUT THIS AS SHE DOES NOT WORK FOR US. KEONA WAS HAPPY WITH THAT.

# Olson Exhibit 18

## Olson 5/10/06 notes regarding Jordan shift change

)

⌐

000057

May 10, 2006

I spoke with Kiona Jordan today regarding the issues we have been having with her moving to 2nd shift. She expressed that she was not able to work 2nd shift due to her child care restrictions. I told her that we did have to make this move based on CAT business decisions and that I did review her resume which said she was able to work 1st, 2nd, or 3rd shifts.

I told her we could do a couple of things. One, we could separate her from her 2nd shift assignment with the eligibility for rehire and the next 1st shift position that we had open that fit her skill sets we would offer it to her. Second, she could remain working on second shift and if a 1st shift position in kitting opens up she could be transferred back to 1st shift. I told her that I would not know when this would happen but that she could keep in constant communication with her supervisor. She elected to keep working on 2nd shift, she has made arrangements for her children and can continue, but doesn't want to permanently remain on 2nd shift. Again, I told her that she would need to review this with the management team in Joliet.

To address the issue of her concerns working under Ray Ebner, she is now working on 2nd shift reporting to Robert Dillon and ultimately Lou Vajko. She seemed extremely pleased with this.

We ended the conversation on a positive note and I think this situation is now resolved. We will need to look at moving her to a 1st shift position if it does indeed become available.

EXHIBIT
18

# Olson Exhibit 19

# Employee warning notice Lewis Gregg – 7/3/06

000052

# EMPLOYEE WARNING NOTICE

Employee Name: _Lewis Gregg_                    Date of Warning: _7-3-06_

Employee Number: _____    Department: _____    Shift: _____

Supervisor Completing Form (please print): _Amanda Olson_

**Type of Violation**

| | | |
|---|---|---|
| ☐ Attendance | ☐ Carelessness | ☐ Insubordination |
| ☐ Lateness/Early Quit | ☐ Failure to Follow Instructions | ☐ Violation of Safety Rules |
| ☐ Rudeness to Employees/ Customers | ☐ Willful Damage to Material/Equipment | ☐ Working on Personal Matters |
| ☐ Unsatisfactory Work Quality | ☑ Violation of Company Policies of Procedures | ☐ Other _____ |

**Previous Warnings:**

| | Oral | Written | Date |
|---|---|---|---|
| 1st Warning: | | | |
| 2nd Warning: | | | |
| 3rd Warning: | | | |

**Employer Statement:**

Date of incident: _6-30-06_    Time: _3:00 PM_

 Please see attached notes

**Employee Statement:**

I Agree with Employer's Statement ☐

I Disagree with Employer's Statement ☐

Reason: _____

**Action to be taken:**

| | | |
|---|---|---|
| Warning | ☑ | |
| Probation | ☑ | |
| Suspension | | |
| Dismissal | | |
| Other | | |

Consequence should incident occur again: it will result in immediate dismissal  Zero tolerance

I have read this Employee Warning and understand it.

_____    Date _____
Employee's Signature

_____    Date _____
Signature of Supervisor Who Issued Warning

EXHIBIT
19
Blumberg No. 5208

000053

June 30, 2006

Amanda Olson
Don Chapman
Kiona Jordan

Kiona Jordan came to me today stating that she wanted to file a sexual
harassment claim on Lewis Gregg. She provided me with a 4 page written
complaint that is now in her file. She stated the following:

- Lewis Gregg repeatedly gave her his phone number and asked that she
  call him after work.

- Asked her to come over and watch Xrated movies.

- Was treating her rudely, said "no what go home if you don't like what I'm
  saying"

Kiona mentioned 3 employees that we needed to talk to: Seneca Carter,
Clarissa James, and Erica Washington

Kiona stated that she felt comfortable confiding in Seneca Carter and that he had
witnessed some of these encounters. We spoke to Seneca Carter. I asked him
if at anytime he felt that Lewis was acting inappropriately. He responded with no.
In regards to the phone number comment. Seneca explained that Lewis did not
have a Nextel yet, so he gave the entire department his home phone number and
he asked his employees to call him at home if they were not able to come in. He
also said that if an employee needed to leave early they needed to let Lewis
know in advance, thus calling him at home.

I asked Seneca had any first hand knowledge of Lewis acting inappropriate or
making anyone feel uncomfortable. Seneca said No.

I spoke with Clarissa James. She said that in her opinion Lewis Gregg was very
friendly to everyone in the department. The only inappropriate thing she felt he
was doing was telling jokes. I asked her what kind of jokes, and she just said
they were inappropriate for a supervisor to be telling his employees. I asked her
if she had been a witness to anything that was being said specifically to Kiona
and she said no. She had said that he had made comments to Erica but that
was it. She also didn't say/know the substance of those said comments.

Erica Washington was the other employee that Kiona had mentioned. Erica
came into work on Friday, June 30th (a scheduled work day), picked up her check
and left. We have had no contact with her in regards to this issue.

000054

I then spoke to Lewis Gregg. Lewis said that anytime he had instructed Kiona to do something she constantly gave him an attitude. He denies ever asking her to come over to watch Xrated movies. He also said (as did Seneca) that he gave the entire department his home phone number to let him know of any absences or employees wanting to leave early. This was done again because he did not have a Nextel at that time.

In regards to Kiona's comment ""no what go home if you don't like what I'm saying". Kiona had gone up to Lewis and told him that she needed to leave early (she did not give him any notice or call him advance) he said that she could not due to coverage and the work load. She gave him "attitude" and that is when he told her " if you don't like what I am telling you than you can go home".

Lewis also mentioned that he knew Kiona before he became a supervisor and there had been no issues.

Due to the fact we do have a witness stating that Lewis was telling inappropriate jokes to his employees he will be written up. This will be formatted as a zero tolerance. Lewis was a new supervisor and is still being acclimated to his position but this behavior will not be tolerated.

Due to Kiona's situation we moved her effective Monday, July 3rd (later we found out she had a vacation day this day) to a first shift kitting position. This was a lateral move in regards to pay rate.

On Wednesday July 5th, we moved Kiona Jordan to another first shift position open up in repack, reporting to Norma Vargas. Again, this was a later move. Te reasoning for this move was mid May Kiona had a complaint (also filed) against Ray Ebner stating he was a racist. Ray is still the first shift supervisor in kitting. Within in this time frame Norma had this position open up, we moved Kiona there to prevent any other issues with Ray Ebner.

Once Kiona started in repack Norma sat down with her and documented the tasks that she would be held responsible for. This was on a separate conversation form on 7-5-06.

At this time we consider this investigation closed.

## Olson Exhibit 19A

Olson 6/30/06 notes regarding Jordan's complaint on Lewis Gregg

)

)

000053

June 30, 2006

Amanda Olson
Don Chapman
Kiona Jordan

Kiona Jordan came to me today stating that she wanted to file a sexual harassment claim on Lewis Gregg. She provided me with a 4 page written complaint that is now in her file. She stated the following:

- Lewis Gregg repeatedly gave her his phone number and asked that she call him after work.

- Asked her to come over and watch Xrated movies.

- Was treating her rudely, said "no what go home if you don't like what I'm saying"

Kiona mentioned 3 employees that we needed to talk to: Seneca Carter, Clarissa James, and Erica Washington

Kiona stated that she felt comfortable confiding in Seneca Carter and that he had witnessed some of these encounters. We spoke to Seneca Carter. I asked him if at anytime he felt that Lewis was acting inappropriately. He responded with no. In regards to the phone number comment. Seneca explained that Lewis did not have a Nextel yet, so he gave the entire department his home phone number and he asked his employees to call him at home if they were not able to come in. He also said that if an employee needed to leave early they needed to let Lewis know in advance, thus calling him at home.

I asked Seneca had any first hand knowledge of Lewis acting inappropriate or making anyone feel uncomfortable. Seneca said No.

I spoke with Clarissa James. She said that in her opinion Lewis Gregg was very friendly to everyone in the department. The only inappropriate thing she felt he was doing was telling jokes. I asked her what kind of jokes, and she just said they were inappropriate for a supervisor to be telling his employees. I asked her if she had been a witness to anything that was being said specifically to Kiona and she said no. She had said that he had made comments to Erica but that was it. She also didn't say/know the substance of those said comments.

Erica Washington was the other employee that Kiona had mentioned. Erica came into work on Friday, June 30th (a scheduled work day), picked up her check and left. We have had no contact with her in regards to this issue.

EXHIBIT
19a

000054

I then spoke to Lewis Gregg. Lewis said that anytime he had instructed Kiona to do something she constantly gave him an attitude. He denies ever asking her to come over to watch Xrated movies. He also said (as did Seneca) that he gave the entire department his home phone number to let him know of any absences or employees wanting to leave early. This was done again because he did not have a Nextel at that time.

In regards to Kiona's comment ""no what go home if you don't like what I'm saying". Kiona had gone up to Lewis and told him that she needed to leave early (she did not give him any notice or call him advance) he said that she could not due to coverage and the work load. She gave him "attitude" and that is when he told her " if you don't like what I am telling you than you can go home".

Lewis also mentioned that he knew Kiona before he became a supervisor and there had been no issues.

Due to the fact we do have a witness stating that Lewis was telling inappropriate jokes to his employees he will be written up. This will be formatted as a zero tolerance. Lewis was a new supervisor and is still being acclimated to his position but this behavior will not be tolerated.

Due to Kiona's situation we moved her effective Monday, July 3rd (later we found out she had a vacation day this day) to a first shift kitting position. This was a lateral move in regards to pay rate.

On Wednesday July 5th, we moved Kiona Jordan to another first shift position open up in repack, reporting to Norma Vargas. Again, this was a later move. Te reasoning for this move was mid May Kiona had a complaint (also filed) against Ray Ebner stating he was a racist. Ray is still the first shift supervisor in kitting. Within in this time frame Norma had this position open up, we moved Kiona there to prevent any other issues with Ray Ebner.

Once Kiona started in repack Norma sat down with her and documented the tasks that she would be held responsible for. This was on a separate conversation form on 7-5-06.

At this time we consider this investigation closed.

# Olson Exhibit 20

# CF 7/5/06 Dillon re Plaintiff setting up Gregg

Jul 06 2006

000051

# CONVERSATION FORM

Date of Conversation: **7/05/06**

Person Completing Form: ROBERT C. DILLON     Title: SUPERVISOR

Person(s) Involved: Lewis Gregg     Title: SUPERVISOR

Kiona Jordan     Title: Kitter

Title:

Title:

Title:

Witness to Conversation:     Title:

Details of Conversation: On friday 6/30/06 two R&D employees told me that, Kioan was going to setup lewis for sexual harassment so that she could move to first shift. Also she told another employee she could do the same if she wants to go to first shift.

EXHIBIT
20

## Olson Exhibit 21

Olson 6/7/06 notes re determination to
suspend Plaintiff without pay

000044

July 6, 2006

It was brought to my attention by Mike Saltzman that 2 employees (that wish to remain nameless) confided in their 2nd shift supervisor Robert Dillon that the sexual harassment claim against Lewis Gregg was a scam to have Kiona moved to first shift. These 2 employees are from a different department in a different part of the building and had nothing to do with our original investigation. They heard this first hand from Kiona and felt it was "wrong" and wanted to report this type of behavior.

Mike Saltzman spoke to Robert Dillon and asked him to let us know who these 2 employees were and that it was really important that we talk to them about this matter. Robert did disclose this information, for this purpose we will refer to them as witness 1 and witness 2.

We spoke to witness 1 on July 6th. This was her statement:

*I (witness 1) was talking to another employee (witness 2) and she stated that she had talked to Kiona Jordan and in so many words Kiona Jordan said that she filed a sexual harassment suit against Lewis Gregg so that she can go to first shift. Witness 2 also said that Kiona Jordan told another employee Erica Washington that she should do the same thing.*

We spoke to witness 2 on July 6th. She was a little more reluctant to cooperate and really didn't want to be involved. We assured her we would not be giving out her information. Her statement was:

*Kiona mentioned that by the end of the week she would be on 1st shift. She also said/encouraged another employee (Erica Washington) to do the same thing. This would happen by whatever means necessary.*

Taking this information our plan of attack was going to be sitting down with Kiona Jordan and confronting her on this information. We will also be suspending her for 3 days/no pay while we investigate. When she returns she will continue her repacking position and if she was not happy with that we would accept her resignation.

June 7th, 2006

Amanda Olson
Keith Cecil
Kiona Jordan



EXHIBIT
21