# Olson Exhibit 22

## Olson notes on conversation with Plaintiff re her suspension and handling of Gregg's discipline

000045

We sat down and had the following conversation with Kiona Jordan. Throughout the conversation Kiona became irate, upset, and was yelling.

She had been leaving myself (Amanda Olson) and Jennifer Cole messages for us to contact her about the Lewis Gregg investigation. I opened this conversation by telling her we have taken the appropriate disciplinary action with Lewis and we consider this matter closed.

However, it was brought to our attention multiple witnesses and documentation that Kiona Jordan had filed this sexual harassment claim as a scam to get moved to first shift and that she encouraged another employee (Erica Washington) to do the same thing.

I told her that we have take all of her past claims (three) very seriously and we have accommodated all of her requests and we are extremely upset that this is the behavior we have received in return.

Our action on this item is that we are putting her on a three day suspension beginning on Monday, July 10th ending Wednesday, July 12th. When she returns she will continue to work with Norma Vargas in repack. She will still be responsible for the duties outlined on 7-5-06 (also on file) and her wage would remain at $10.00. I also told her if she was not satisfied with this position we would accept her resignation.

Throughout this entire dialogue she was upset and was claiming we did not handle the Lewis Gregg situation correctly. She was upset that he was not suspended or fired. Again we assured her we took the necessary disciplinary steps to handle him with the evidence we had. She was crying hysterically and we told her to take the rest of today off. Keith drove her to the gate.

Since then she has come into our Shorewood office (with her mother) looking to talk to someone, left stating she was going to contact her lawyer and sue R&O. She has also called our other offices. We will be documenting those situations on separate conversation forms.

EXHIBIT

22

# Olson Exhibit 23

## CF 7/9/06 Witness 1, Constance Daniels re false claims against Gregg

Jul 10 2006 3:42PM    HP LASERJET FAX

000048    P.2

page 2

JUL 10,2006 04:29P

000-000-00000

# CONVERSATION FORM

Date of Conversation: **7-6-06**

Person Completing Form:  Witness 1 _____ Title: RBO Employee

Person(s) Involved: _____ Title: _____

_____ Title: _____

_____ Title: _____

_____ Title: _____

_____ Title: _____

_____ Title: _____

Witness to Conversation: _____ Title: _____

Details of Conversation: I (WITNESS 1) WAS TALKING TO ANOTHER EMPLOYEE (WITNESS 2) AND SHE STATED THAT SHE HAD TALKED TO KIONA JORDAN AND IN SO MANY WORDS KIONA JORDAN SAID THAT SHE FILED SEXUAL HARASSMENT AGAINST LEWIS GREGG SO THAT SHE CAN GO TO FIRST SHIFT. WITNESS 1 ALSO SAID THAT KIONA JORDAN TOLD ANOTHER EMPLOYEE ERICA WASHINGTON THAT SHE SHOULD DO THE SAME THING.

Witness 1  Constance Daniels

EXHIBIT

23

page 2

JUL 10,2006 09:39P

000048

# CONVERSATION FORM

Date of Conversation:  7-6-06

Person Completing Form:  Witness 2                    Title:

Person(s) Involved:                                   Title:

                                                      Title:

                                                      Title:

                                                      Title:

                                                      Title:

                                                      Title:

Witness to Conversation:                              Title:

Details of Conversation:  Kiona mentioned that by the end of the week she would be on 1st shift.  She also said
/encouraged another employee (Erica Washington) to do the same.  This would happen by whatever means
necessary.

EXHIBIT

24

## Olson Exhibit 24

CF 7/6/06 Witness 2, Demetria Jenkins re
Plaintiff's intention to return to 1st shift

EXHIBIT 31

000048

# CONVERSATION FORM

Date of Conversation: **7-6-06**

Person Completing Form: Witness 2       Title: _____

Person(s) Involved: _____    Title: _____

                      _____    Title: _____

                      _____    Title: _____

                      _____    Title: _____

                      _____    Title: _____

Witness to Conversation: _____    Title: _____

Details of Conversation: Kiona mentioned that by the end of the week she would be on 1st shift.  She also said /encouraged another employee (Erica Washington) to do the same.  This would happen by whatever means necessary.

EXHIBIT
24
Bamberg No. 5209

# Olson Exhibit 28

# EEOC Jordan charge 9/2/06

)

⌐

# CHARGE OF DISCRIMINATION

| | AGENC | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | ☐ FEPA  ☒ EEOC | |

Illinois Department of Human Rights                                          and EEOC

*State or local Agency, if any*

| NAME(Indicate Mr., Ms., Mrs.) Ms. Kiona Jordan | HOME TELEPHONE (Include Area Code) 815-803-3612 | |
|---|---|---|
| STREET ADDRESS 320 Richards Street | CITY, STATE AND ZIP CODE Joliet, IL 60433 | DATE OF BIRTH 12/6/1984 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME R&O | NUMBER OF EMPLOYEES, MEMBERS 15+ | TELEPHONE (Include Area Code) | |
|---|---|---|---|
| STREET ADDRESS 707 West Jefferson | CITY, STATE AND ZIP CODE Shorewood, IL 60404 | | COUNTY Will |
| NAME N/A | | TELEPHONE NUMBER (Include Area Code) N/A | |
| STREET ADDRESS N/A | CITY, STATE AND ZIP CODE N/A | | COUNTY N/A |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)) | DATE DISCRIMINATION TOOK PLACE EARLIEST |
|---|---|
| ☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN  ☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER (Specify) | June 2006        July 2006  ☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired by R & O on December 7, 2006. From mid-June of 2006 until July of 2006, I have been subjected to verbal sexual harassment. Despite multiple complaints to management at both R & O and Caterpillar, the harassment has continued. In July of 2006, I was also retaliated against for complaining about sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended.

DEPT. OF HUMAN RIGHTS
INTAKE UNIT
SEP 7 2006
RECEIVED
BY

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the Agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) 9/2/06 |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| Date    [signature] 8/2/06    Charging Party (Signature) | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year)    9/2/06 |

EEOC FORM 5 (REV. 3/01)

KJ JDHR 00033

**KIONA JORDAN V. R & O**

Page 2 of charge:

I.    A.    **ISSUE/BASIS**

1.    Sexually harassed from approximately mid-June of 2006, and continuing until July of 2006.

B.    **PRIMA FACIE ALLEGATIONS**

1.    I was hired by Respondent, R&O, as a kitter on or about December 7, 2005. R&O placed me at the CATERPILLAR location. During my employment, I was discriminated against because of my sex, female. I was also subjected to sexual harassment by, LOUIS GREGG ("GREGG"), my R&O supervisor. Respondent has failed to take effective corrective action in a timely manner, and has failed to prevent the sexual harassment.

2.    I believe that I have been discriminated against because of my sex, female, and sexually harassed in that:

a.    I was a satisfactory and conscientious employee.

b.    On or around June 15, 2006, on approximately 8 or 9 occasions GREGG made sexually offensive comments to me. For example, GREGG stated the following to me:

i.    "I love the way you look.";

ii.    "You are very sexy to me."; and

iii.   "You need to stop coming to work looking like that."

c.    After GREGG's first offensive comment to me, I politely told him that I had a boyfriend and that I was not interested. However, GREGG responded, "I understand you have a boyfriend but nobody needs to know about us. I can take you to Chicago and nobody will find out about us." I again told GREGG that I had a boyfriend and that I was not interested. Finally, at the end of that day GREGG said to me, "You do act like you are uncomfortable when I come around so I am going to leave you alone."

_____    9/2/06
Complainant's Signature               Date

KJ IDHR 00034

**KIONA JORDAN V. R&O**
Page 3 of charge:

d.   On or around June 17, 2006, GREGG said to me, "I see you driving a Mustang, that's a nice looking Mustang. If I was you, I would do whatever I tell you to do if you want to keep it." I asked GREGG, "What is that supposed to mean?" GREGG responded, "You know what I mean." ERIKA WASHINGTON ("WASHINGTON") witnessed GREGG make this comment to me.

e.   On or around June 24, 2006, I asked GREGG if I could leave work early because my babysitter unexpectedly had to leave early and my child would be home alone. GREGG responded, "I wouldn't have had a problem with you leaving early if you would have buttered me up the other day." I told GREGG, "I am serious. I really need to go home." He responded, "You can leave under one condition, you come over to my house when I get off at 11:30 or 12. We can watch movies together. I got a lot of movies, especially a lot of x-rated movies that I want you to see." I told GREGG, "No way, I ain't coming over and watching x-rated movies with you!" GREGG responded, "If you come over to my house I can guarantee you will be satisfied and you would end up falling in love with me." I told him again, "I am not coming over to your house, and I have to leave at 8." GREGG said, "Fine then. If you leave at 8 and get written up, don't be mad at me."

f.   Immediately after this incident I walked over to SENECA's "LNU"("SENECA") work area and told him that GREGG wanted me to come over to his house to watch x-rated movies. SENECA responded, "Is that why he has been coming over here by us? If I was you I would get a tape recorder and record him asking you that."

_____    9/2/06
Complainant's Signature        Date

KJ IDHR 00035

06/28/2008  08:11 FAX  3121959114          Asonye & Associates                          ☒ 005/008

**KIONA JORDAN V. B&O**
Page 4 of charge:

g.    On the following Monday, on or about June 26, 2006, GREGG asked me, "Why didn't you come over to my house like you said you would?" I told GREGG, "I told you I was not coming over to your house." GREGG responded, "You should be glad that I didn't write you up for leaving." I just walked away from GREGG after he said this.

h.    On or about June 29, 2006, KARISSA JAMES ("JAMES"), WASHINGTON, GREGG, and me were all in a meeting together. In said meeting, GREGG raised his voice and yelled at me, "Kiona, you know you know better than to leave those tickets in the tower. Karissa [JAMES] shouldn't have to tell you what to do, you have been here 7 months! If you don't like what's being said to you, you can be replaced! If you don't like it, just leave. You know where the door is." I was extremely embarrassed by GREGG's conduct toward me during the meeting.

i.    Also on or about June 29, 2006, GREGG asked us to line pieces of wood up against the wall so that the trucks would not mark up the wall. However, when GREGG asked us to do this, he made a sexually offensive comment. GREGG stated, "Kiona and Erika, I need you all to handle my wood.", referring to his penis. While laughing, GREGG then stated, "I'm just playing, but I really do need you to move some wood." JAMES witnessed this and stated to GREGG, "Now Louis, I told you about playing with those girls, you can't play with everybody like that. Don't get mad if one of those girls complains that you are sexually harassing them."

_(signature)_          9/2/06

Complainant's Signature        Date

KJ IDHR 00036

**KIONA JORDAN V. R&O**
Page 5 of charge:

j.    On approximately June 29, 2006, I complained about GREGG's sexual harassment to LESLIE "MCGINNEST" ("MCGINNEST"), a human resources employee of CATERPILLAR. MCGINNEST stated that she could not help me because GREGG was an R&O employee, and she worked for CATERPILLAR. MCGINNEST then instructed me to take my complaint to the R&O human resources contact, AMANDA "LNU" ("AMANDA").

k.    On or about June 30, 2006, I complained to my other R&O supervisor, RAY ABNER ("ABNER"). I gave ABNER a hand written note that detailed my sexual harassment complaints about GREGG. ABNER responded that he was going to take the complaint to AMANDA from human resources. Together, we walked up to meet with AMANDA.

l.    On or about June 30, 2006, I told AMANDA about GREGG's harassment and ABNER gave her my hand written notes. AMANDA stated to me, "Kiona, I'm very sorry that this happened to you. I am going to get to the bottom of this and find out what's going on."

m.    Shortly after my complaint to AMANDA on June 30, 2006, she called JAMES and SENECA up to her office to discuss my complaint about GREGG's sexually harassing conduct.

n.    After JAMES got back from her meeting with AMANDA, JAMES told me, "I told them how GREGG is extra friendly with you. I did not tell them everything because GREGG would have probably got fired."

o.    After SENECA got back from his meeting with AMANDA, he told me, "I told them everything that you had told me."

p.    To the present, I am not sure if GREGG was disciplined with regards to my sexual harassment complaint.

_____     9/2/06
Complainant's Signature          Date

KJ IDHR 00037

**KIONA JORDAN V. R&O**
**Page 6 of charge:**

II    A.    ISSUE/BASIS

    1.    Retaliated against for complaining about sexual harassment.

    B.    PRIMA FACIE ALLEGATIONS

    1.    I believe that I have been retaliated against for having openly opposed discrimination in that I was transferred to a physically challenging department.

      a.    I complained about GREGG's sexual harassment to management employees that worked for Respondent. For example, I complained to GREGG, ABNER and AMANDA in June of 2006.

      b.    On or around June 30, 2006, Respondent purportedly investigated my allegations of sexual harassment against GREGG.

      c.    Shortly after I complained, on or around July 05, 2006, I was demoted from the kitter position to the repak position. As a result, my job location changed, and my job class was downgraded from Class III to Class I. Furthermore, as a result of the demotion, I had to work in much dirtier conditions that required a lot of manual labor and heavy lifting. Finally, I was one of only 2 female employees in that entire department. The other female employee was a supervisor and did not have to engage in the same heavy lifting that I was required to do.

      d.    On or around July 7, 2006, I had a meeting KEITH CECIL ("CECIL"), AMANDA, and BOB MCGEE ("MCGEE"), the human resources supervisor. In said meeting, AMANDA stated to me, "Kiona, the investigation is over with. You lied to us. You told us that GREGG said these things, and we have a witness who said you lied to us to get on first shift." I was shocked at what AMANDA stated and asked, "Who is the witness that said I lied?" AMANDA responded, "We can't tell you that. Okay, we are suspending you for 3 days for lying." When you return, you will return to your Class 1 job as Repak.

      e.    I was suspended from work from Friday July 7, 2006, through Tuesday July 11, 2006. I am not aware of any other employees that were suspended for purportedly lying about being sexually harassed.

        Complainant's Signature            Date

KJ IDHR 00038

08/28/2006 08:18 FAX  3127959114          Asonye & Associates          007/008

**KIONA JORDAN V. R&O**
Page 7 of charge:

f.    The adverse actions stated above followed my protected activity within such a period of time as to raise an inference of retaliatory motivation.

```
"OFFICIAL SEAL"
EVA E. SANDOVAL
Notary Public, State of Illinois
My Commission Expires March 2, 2008
```

_____    _____
Complainant's Signature              Date

Subscribed and sworn to before me this

2  day of August, 2006.

_____
Notary Public

KJ IDHR 00039

# Jordan Exhibit 31

## Transcription of Plaintiff's handwritten notes on Gregg, handwritten notes, and transmittal email from Plaintiff's counsel

## Jesse Kehr

| | |
|---|---|
| **From:** | Elizabeth Hubbard |
| **Sent:** | Friday, September 12, 2008 1:43 PM |
| **To:** | Jesse Kehr |
| **Subject:** | FW: Jordan-transcription of handwritten notes |
| **Attachments:** | Exhibit 31 -transcribed.pdf |

Elizabeth Hubbard

Hubbard & O'Connor, Ltd., 900 West Jackson Blvd.,Suite Six West, Chicago, Illinois 60607; 312-421-5960. Email: ehubbard@hubbardoconnor.com

This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employer or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this message in error, return the message to us at ehubbard@hubbardoconnor.com and delete any copies thereof. Thank you.

**From:** Uche Asonye [mailto:uasonye@aa-law.com]
**Sent:** Tuesday, September 02, 2008 2:33 PM
**To:** Elizabeth Hubbard
**Subject:** Jordan-transcription of handwritten notes

Here is the transcription.  There are some words that we could not figure out and we marked those.

Very Truly Yours,

Uche O. Asonye
Attorney at Law
Asonye & Associates
11 South LaSalle Street  #2140
Chicago, Ill  60603
(312) 795-9110
(312) 208-9110 (cell)
(312) 795-9114 (f)
uche@aa-law.com
uche_asonye@yahoo.com
www.aa-law.com

**Exhibit 31**

From the first day Lewis became our Supervisor he's been very [inappropriate] he's said things to me that were very [embarrassing] like do I like Xrated movies and don't tell nobody about me and him as if something were to ever go on[.] [T]hen on Sat Jun 24 I asked Lewis could I leave because my mom had to go to church and I had no baby [sitter] and he replied maybe if you would have buttered me up yesterday I would have no problem but I insisted that I wasn't playin[g] and I really had to go. So he said yeah under 1 condition that I come over his house and watch movies with him he said I got all kind[.] [T]hen he went on and said do you like Xrated movies and I said you crazy! [T]hen he just laughed and walked away. [He] said no I'm serious I get off at 12:00 a.m. I live somewhere around Ruby Street and I just [ignored] him and and kept going[.] [She] told Lewis when he asked me out and for my number the first time I got a boyfriend and he just kept on sayin[g] no one have to know about us I could take you up to Chicago somewhere so I went in told Seneca cause he's someone I feel comfortable talking to his exact words was that's bogish [sic] and the next time be to it tape record him off your phone [*two indecipherable words*]. Erica she couldn't believe it and then she said well he is always talkin to you by yourself or always pullin you to the side so then [T]uesday roll around and he did the same thing to her he goes to [E]rica I want to talk to you then goes you no what I'll talk to you later then he goes you no what I really aint got to tell you nothing its something I want you to tell me then he goes in get on his cart she repeated asking him what go [a]head and say what you want I don't care about Kiona hearing it then he goes in start up his cart in says better yet I don't want you to tell me something I want you to show me then he laugh and pulled off and said you get it now and Erica just shook her head and I told her now you see what I'm talking bout[.] Me

1

personally I don't like to see people gettin in trouble in things of that nature but I hate for authority figures to misuse there positions and substitute it for things that are very inappropriate[.] I come to work everyday I been here for 7 months missed 1 day my daughter's b-day thats because I was moved to second shift and didn't have a baby[sitter] but I come to work faithfully do my job and go home[.] [M]y last job compared to this was or is deja vu and I wasn't very educated on [k]nowing the things I know now. [B]ut seeing how all the heart ache and pain I went through on my last job and the backstabbing and just everything that could possibly went wrong did the crying every nite [sic] and going to work [embarrassed] people talking bout me because I stood up for what was right but in the minds was wrong I no how much of a headache it is fear of loosing [sic] your job and not [k]nowing if they do take care the problem will you then be [retaliated] against so it makes me so scared to say something even when my heart says it's the right thing my mind says it comes with a lot bad things every since this happened to me at my last job male authority really scares me in a sense and now my [paranoia] is 10 times worse I no [sic] I have to work to take care home and to be able to raise my 5 year old but do I have to constantly be harassed on the job and made to feel uncomfortable. [You] can never really understand how it feels to work in a hostile work environment until the shoes are worn on your feet every since I've turned down all his [gestures] he's been acting very impolite[.] [T]oday we had a meeting and my lead took over the meeting and when she finished he turned to me and say yeah Kiona I expect more from you / you [do] better should no one have to tell you nothing just being very out of place so when I say something in defence [sic] he replied you no what go home leave if you don't like what I'm say leave now[.] I was but I never [cutoff on top of page]. Just the day before he was trying [cut off the last words on this line] me to come over and telling me

2

what time he was getting off and asking me why I don't call him he says he gave us him home

phone number in case were not coming or will be late but thats why the job has a phone why

would you give employees your house number instead of the job number so hes taking it out on

me cause I turned him down countless times so after the meeting I went and ask Lue during my

next break can I talk to him he said yes but when I think about it thats just another man I have to

be alone with explaining to him what a supervisor was doing to me[.] I'm not really comfortable

with any man authority figure I'm very disgusted with the way I've been treated and don't

understand why I keep getting put in these situations its eating me alive trying to keep my

[composure] and deal with it I even talked to my mom from work in tears because my heart was

hurting because I don't want to go through this all over again but she told me to do the right thing

and learn from my mistakes from the last incident I'm the victim and to do whats right no matter

how [many times] it happen and how any one feels about it!

3

000071

From the First Day Lewis became our supervisor
he's been very inapporiate he's said things to
me that were very mbaresing like to I like
X rated movies and dont tell Nobody about
me and him if something were to ewre
go on then on Sat Jun 24 I asked Lewis
could I leave because my mom had to go
to church and I had No baby sister and
Le Replined maybe IF you would have butter of
me up yestrday I would have No problem
but I insisted that I wasnt playin and I
really had to go. So he said yeah urlond
I condition that I come over his house
and watch movies with him he said I
got all kind often he went on and said do
you like X rated movies and I said you crazy!
then he just Laughed and walked away
N said No Im Serious I gest off at 12:00 am
I Leave on somewhere around Ruby street
and I just ingrered him and and kept going
she told Lewis when he asked me out and for
my the First time I got a boyfriend and he
just kept on sayin No one haveto no about us
i could take up to Chicago somewhere So I
sent in told Seneca cause he's someone I fel
comfatable talkin to he's exact words was
at bogish and the next true be to it tape reard
him off us Phone a dell

EXHIBIT
31

Erica she couldnt beleive it and then she said well
he is always talkin to you by yourself or always
Pullin you to the side so then Tuesday Roll around
and he did the same thing to her he goes Erica
I want to talk to you then goes you do what
Ill talk to you later then he goes you do what
I really aint got to tell you yes Nothing Its
something I want you to tell me then he goes
in get on his cart she Repeated asking him
what go head and say what you want I dont
care about Liana hearing it then he goes in
start up his cart in Says better yet I
dont want you to tell me something I
want you to show me then he laugh and
Pulled off and said you get it Now and
Erica Just shook her head and I told
her now you See what Im talkin bout me
Personally I dont like to See people getting in
trouble in things of that Nature but I hate
For Authority Figures to misuse there Postions
and substitute it for things that are Very
napporite I come to work everday I been
here for 7 months missed 1 Day my Daughters
2 day thats because I was moved to second
shift and didnt have a babysister but I come
o work faithfully do my Job and go home my
last Job compared to this was is dejavu
rel I wish I very educated on nowing the
things I know Now. but seeing how all

the heart ache and pain I went through on my last job and the back stabbing and just everything that could possibly went wrong did the crying every nite and going to work imbarrest people talking about me because I stood up for what was right but in the minds who wrong I no how much of a headach it is fear of loosing your job and job Now me If they do take care the problem will you then be Retaliested against so It makes me so scared to say something even when my heart says its the Right thing my mind says It comes with alot bad things every since this happened to me at my last Job male authority Really scares me in a sense and now my Persianoi is 10 times worse I no I have to work to take care home and to be able to raise my 5 yr old but do I have to constantly be harrassed on the job and made to feel uncomfertble. U can never really understand ow it feels to work in a hostile work enviorment until the shoes are worn on your feet every since Ive turned down all his advances he's been acting very impolite today we had meeting and my lead took over the meeting and when she finished he terned to me and say yesh Kirow I expect more from you/you do better should no one have to tell you nothing not being very out of place so when I say some thing in Defence he Replied you No what Go home leave if you dont like what Im saying leave Now [illegible]

but I knew the Day before he was saying telling
me to come over and telling me what time he
me to come over and telling me why I
was gettin off and asking me why I
call him he says he gave us his house
# in case we are Not comming be will be
ble but thats why the job has a phone why
would you give employees your house
instead of the job # so hes taking it
out on me cause I turned him down countless
times so after the meeting I went and
ask Luc During my Next break can I
talk to him he said yes but when I
think about it thats Just another man
I have to be alone with explaining to him
what a supervisor was doing to me
Im not really comfortable with any man
authority figure Im very disgusted with
the way Ive been treated and dont
understand why I keep getting put in
these situations its eatting me alive
trying to keep my composure and deal
with it I even called my mom from work
n tears because my heart was hurting
because I dont want to go through this
all over again but she told me to stay
do the right thing and Learn from my mistakes
on the last incident Im the victim
el to do whats right No matter how me
nes it happen and how any one feels about
it

## Olson Exhibit 37

## Employee warning notice Lewis Gregg – 7/3/06

# EMPLOYEE WARNING NOTICE

Employee Name: __Lewis Gregg__                    Date of Warning: __7-3-06__

Employee Number: _____    Department: _____    Shift: _____

Supervisor Completing Form (please print): __Amanda Olson__

**Type of Violation**

- [ ] Attendance
- [ ] Lateness/Early Quit
- [ ] Rudeness to Employees/ Customers
- [ ] Unsatisfactory Work Quality

- [ ] Carelessness
- [ ] Failure to Follow Instructions
- [ ] Wilfull Damage to Material/Equipment
- [x] Violation of Company Policies of Procedures

- [ ] Insubordination
- [ ] Violation of Safety Rules
- [ ] Working on Personal Matters
- [ ] Other _____

**Previous Warnings:**

|  | Oral | Written | Date |
|---|---|---|---|
| 1st Warning: |  |  |  |
| 2nd Warning: |  |  |  |
| 3rd Warning: |  |  |  |

**Employer Statement:**

Date of Incident: __6-30-06__    Time: __3:00 PM__

__Please see attached notes__

**Employee Statement:**

I Agree with Employer's Statement

I Disagree with Employer's Statement

Reason: _____

**Action to be taken:**

| Warning | [✓] |
| Probation | [✓] |
| Suspension | [ ] |
| Dismissal | [ ] |
| Other | [ ] |

Consequence should Incident occur again: __it will result in immediate dismissal  Zero tolerance__

I have read this Employee Warning and understand it.

_____    Date _____
Employee's Signature

_____    Date _____
Signature of Supervisor Who Issued Warning

EXHIBIT
37

0000003

KJ IDHR 00098

### b.  Sexual Harassment

"R & O Specialties" believes that you should be afforded the opportunity to work in an environment free of sexual harassment. Sexual harassment is a form of misconduct that undermines the employment relationship. No "R & O Specialties" employee, either male or female, should be subjected verbally or physically to unsolicited and unwelcome sexual overtures or conduct.

Sexual harassment does not refer to occasional compliments of a socially acceptable nature. It refers to behavior that is not welcome, that is personally offensive, that debilitates morale and, therefore, interferes with work effectiveness.

Behavior that amounts to sexual harassment may result in disciplinary action, up to and including dismissal.

"R & O Specialties" has adopted, and its policy is based on, the definition of sexual harassment set forth by the Equal Employment Opportunity Commission (EEOC). The EEOC defines sexual harassment as unwelcome sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature when:

(1) Submission to such conduct is made either explicitly or implicitly a term or condition of your employment;

(2) Submission to or rejection of such conduct by you is used as the basis for employment decisions affecting you; or

(3) Such conduct has the purpose or effect of unreasonable interfering with your work performance or creating an intimidating, hostile or offensive working environment.

"R & O Specialties" wants you to have a work environment free of sexual harassment by "R & O Specialties", by "R & O Specialties" management personnel, by your coworkers and by others with whom you must interact during your work for "R & O Specialties".

If you experience or witness sexual harassment in the workplace, report it immediately to the Manager of Human Resources. If that individual is the person who is harassing you, you may approach any other member of "R & O Specialties" management with whom you feel comfortable. All allegations of sexual harassment will be quickly investigated. To the extent possible, your confidentiality and that of any witnesses and the alleged harasser will be protected against unnecessary disclosure. When the investigation is completed, you will be informed of the outcome of that investigation.

"R & O Specialties" will not permit employment-based retaliation against anyone who brings a complaint of sexual harassment or who speaks as a witness in the investigation of complaint of sexual harassment.

0000004

KJ IDHR 00099

# Olson Exhibit 38

Olson 6/30/06 notes "Lewis Gregg write-up"

RO-J000147

June 30, 2006

**Lewis Gregg Write Up**

An investigation was conducted on June 30, 2006 involving Lewis Gregg. The following were accusations made:

- Lewis Gregg repeatedly gave an employee his phone number and asked that she call him after work.

- Asked an employee to come over and watch Xrated movies.

- Was treating any employee rudely, said "no what go home if you don't like what I'm saying"

- Was said that Lewis was telling inappropriate jokes to his employees.

During the investigation we were give 3 witnesses to contact. We were able to talk to 2 out of the 3 (the third did not come in to work on the 30th and has not been back since).

In conclusion we were not able to find any evidence of the first three accusations. However, we do have a witness that found Lewis Gregg telling inappropriate jokes to his employees. The nature of these jokes was not determined, but was stated that they were inappropriate in the work place.

As a result of this behavior Lewis Gregg is being written up and put on probation. The probation is indefinite. If it is found that Lewis is at all acting inappropriately or found telling said jokes again he will be terminated immediately. Zero Tolerance.

# Jordan Exhibit 40

## 6/26/06 Employee change form – Gregg to Supervisor

RO-J000135

Jun 23 2006 11:07AM   HP LASERJET FAX                                    P.3

 **R&O**   **MS**   

# Employee Position Change Form

This form must be sent to the Human Resource Department (1) week before the transfer.

This form may be signed by:

- Department Supervisor
- Building Supervisor (if one is assigned)
- Project Manager

> This form must be filled in completely or it will be returned to the supervisor for any problems.

Employee Name: _LEWIS GREGG_

| Position Code | Current | New |
|---|---|---|
| Core Key | PARTS TRUCKER | PARTS SUPERVISOR |
| Job Key | 7 | 10 |
| Class | 24-35 | 22 |
| Building | 2 | 4 |
| Area | 5 | 5 |
| Shift | PAINT LINE | CLEAN ROOM |
| Supervisor | 1 | 2 |
| Reason | JUANITA HERNANDEZ | DON CHAPMAN |

Effective Date: _6-26-06_

Signatures:

Area Supervisor: _____

Building Supervisor: _____

Project Manager: _Don Chapman_

NOTE: All position changes will be effective the following Monday from the time this form is submitted to the Human Resource Department.

# Jordan Exhibit 51

# Jordan EEOC charge against Kemlite 11/4/05

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA <br> ☒ EEOC | 210-2006-00713 |

| Illinois Department Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone No. (incl Area Code) | Date of Birth |
|---|---|---|
| **Ms. Kiona M. Jordan** | **(815) 723-7833** | **12-06-1984** |

| Street Address | City, State and ZIP Code |
|---|---|
| **320 Richards St., Joliet, IL 60433** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **KEMLITE COMPANY INC.** | **201 - 500** | **(815) 467-8600** |

| Street Address | City, State and ZIP Code |
|---|---|
| **23525 W. Eames St, Channahon, IL 60410** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

**DISCRIMINATION BASED ON** (Check appropriate box(es))

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER (Specify below.)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| **09-01-2005** | **10-14-2005** |

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began my employment with Respondent on August 15, 2005, and my most recent position was Production Worker. From around the beginning of September, I was subjected to sexual harassment by a Crew Leader. I complained to Respondent about the sexual harassment on September 29, 2005. After Respondent took action regarding my complaints, several of my co-workers began to harass me. When I complained to Respondent's Human Resources staff about this harassment on or about October 6, 2005, she took no action regarding my complaints and suggested that I find another job. On October 14, 2005, my employment with Respondent was terminated.

I believe that I have been discriminated against based on my sex, female, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended.

**RECEIVED EEOC**

NOV 0 4 2005

**CHICAGO DISTRICT OFFICE**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. <br> SIGNATURE OF COMPLAINANT |
| Nov 04, 2005 _____ Date     X _Kiona Jordan_ Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

**AURORA - 010**

# Olson Exhibit 56

## Defendant's Answer to Complaint

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

KIONA JORDAN,                     )
                                  )
    Plaintiff,                )
                                  )    Civil Action No. 07 C 6452
                                  )
v.                                )    Judge: Coar
                                  )
R&OAURORA, INC,              .    )    Magistrate Judge: Denlow
                                  )
                                  )    Jury Trial Demanded
    Defendant.                )
                                  )

## ANSWER TO COMPLAINT

    Defendant, R & O AURORA, INC., by its attorney, John O'Connor of Hubbard & O'Connor, Ltd., answers the Complaint in this matter as follows:

## NATURE OF THE CASE

    1.    The cause of action for Plaintiff arises under Title VII of the Civil Rights Act, 42 U.S.C. section 2000e, as amended.

**ANSWER:** Defendant admits that Plaintiff seeks relief under Title VII but denies any violations thereof.

    2.    This court has jurisdiction over this matter pursuant to 42 U.S.C. Section 2000e.

**ANSWER:** Defendant admits Paragraph 2.

1



EXHIBIT
56

## JURISDICTION AND VENUE

3.      Venue in the Northern District of Illinois is proper. The claim for relief

arose in this state as required by 42 U.S.C. section 2000e.

**ANSWER:**  Defendant admits Paragraph 3.

4.      All conditions precedent have been fulfilled by Plaintiff, including the

filing of a Charge of Discrimination with the Equal Employment Opportunity

Commission ("EEOC") of the United States Government, and a receipt of a Right-to-Sue

Letter from the EEOC. (EEOC Charge and Right-to-Sue Letter attached as Exhibit A).

**ANSWER:**  Defendant admits that Plaintiff filed a charge of discrimination with the

EEOC and received a right to sue letter from the EEOC.  Defendant denies any other

allegations contained in Paragraph 4.

## PARTIES

5.      Plaintiff is female and a resident of the State of Illinois.

**ANSWER:**  Defendant admits the allegations contained in Paragraph 5.

6.      Defendant, R & O AURORA, INC., is duly registered to conduct business

in the State of Illinois.

**ANSWER:**  Defendant admits the allegations contained in Paragraph 6.

2

7.    At all times pertinent hereto, Defendant, R & O AURORA, INC., has

engaged in an industry affecting commerce and has had fifteen (15) or more employees

for each working day in each of the twenty (20) or more calendar weeks in the current or

preceding calendar year.

**ANSWER:** Defendant admits the allegations contained in Paragraph 7.

## COUNT I
## COMPLAINT OF KIONA JORDAN FOR
## HOSTILE WORK ENVIRONMENT SEXUAL HARASSMENT

8.    That Plaintiff was hired by R & O as a kitter on December 7, 2005 and

placed to work at R & O's CATERPILLAR location.

**ANSWER:** Defendant admits that Plaintiff was hired on December 7, 2005 and worked

at Defendant's Caterpillar location.  Defendant denies the remaining allegations contained

in Paragraph 8.

9.    That during her employment, Plaintiff was supervised by LOUIS GREGG

("GREGG").

**ANSWER:** Defendant admits that Plaintiff was supervised by Gregg during a period of

her employment with Defendant but denies the remaining allegations contained in

Paragraph 9.

10.    That in his position, GREGG was a supervisory employee as defined by

Title VII.

3

**ANSWER:** Defendant denies that Title VII defines supervisory employee and denies all other allegations in Paragraph 10 except to admit that Gregg had supervisory duties over Plaintiff.

11.    That Plaintiff was a satisfactory and conscientious employee who performed assigned tasks in an acceptable manner consistent with R & C's standards and regulations.

**ANSWER:** Defendant denies the allegations contained in Paragraph 11.

12.    That while employed by R & O, from approximately mid-June 2006 to July 2006, Plaintiff was subjected to debilitating sexual harassment, inferior, miserable, and illegal terms and conditions of employment because of her sex, female.

**ANSWER:** Defendant denies the allegations contained in Paragraph 12.

13.    That during her employment, GREGG subjected Plaintiff to numerous instances of sexually inappropriate and unwanted conduct, including but not limited to unwelcome and suggestive comments.

**ANSWER:** Defendant denies the allegations contained in Paragraph 13.

14.    That on or about June 15, 2006, on approximately eight or nine occasions, GREGG made sexually offensive comments to me such as, "I love the way you look," "You are very sexy to me," and "You need to stop coming to work looking like that."

**ANSWER:** Defendant denies the allegations contained in Paragraph 14.

4

15.    That after GREGG's first offensive comment, Plaintiff politely told him that she had a boyfriend and was not interested in him. However, GREGG responded, "I understand you have a boyfriend but nobody needs to know about us. I can take you to Chicago and nobody will find out about us." Plaintiff again told GREGG that she had a boyfriend and that she was not interested in him. Finally, at the end of that day, GREGG said to Plaintiff, "You do act like you are uncomfortable when I come around so I am going to leave you alone."

**ANSWER:** Defendant denies the allegations contained in Paragraph 15.


16.    That on or around June 17, 2006, GREGG said to Plaintiff, "I see you driving a Mustang, that's a nice looking Mustang. If I was you, I would do whatever I tell you to do if you want to keep it." Plaintiff then asked GREGG, "What is that supposed to mean?" GREGG responded, "You know what I mean." ERIKA WASHINGTON ("WASHINGTON") was present when GREGG made this comment to Plaintiff.

**ANSWER:** Defendant denies the allegations contained in Paragraph 16.


17.    That on or around June 24, 2006, Plaintiff asked GREGG if she could leave work early because her babysitter unexpectedly had to leave. GREGG responded, "I wouldn't have had a problem with you leaving early if you would have buttered me up the other day." Plaintiff told GREGG, "I am serious. I really need to go home." He responded,. "You can leave under one condition, you come over to my house when I get off at 11:30 or 12. We can watch movies together. I got a lot of movies, especially a lot of

5

x-rated movies that I want you to see." Plaintiff told GREGG, "No way, I ain't coming over and watching x-rated movies with you!" GREGG responded, "If you come over to my house I can guarantee you will be satisfied and you would end up falling in love with me." Plaintiff told him again, "I am not coming over to your house, and I have to leave at 8." GREGG said, "Fine then. If you leave at 8 and get written up, don't be mad at me."

**ANSWER:** Defendant admits that Plaintiff told Gregg that she needed to go home early. Defendant denies the remaining allegations contained in Paragraph 17.

18.    That immediately after this incident, Plaintiff walked over to SENECA's work area and told him that GREGG wanted Plaintiff to come over to his house to watch X-rated movies. SENECA responded, "Is that why he has been coming over here by us? If I was you I would get a tape recorder and record him asking you that."

**ANSWER:** Defendant denies the allegations contained in Paragraph 18.

19.    That on the following Monday, on or about June 26, 2006, GREGG asked Plaintiff, "Why didn't you come over to my house like you said you would?" Plaintiff responded, "I told you I was not coming over to your house." GREGG then stated, "You should be glad that I didn't write you up for leaving."

**ANSWER:** Defendant denies the allegations contained in Paragraph 19.

20.    That on or about June 29, 2006, during a meeting between KARISSA JAMES ("JAMES"), WASHINGTON, and GREGG, GREGG raised his voice and yelled at Plaintiff, "Kiona, you know you know better than to leave those tickets in the tower.

6

Karissa [JAMES] shouldn't have to tell you what to do, you have been here 7 months! If

you don't like what's being said to you, you can be replaced! If you don't like it, just

leave. You know where the door is."

**ANSWER:** Defendant admits that Gregg criticized Plaintiff for her failure to perform

her job but denies the remaining allegations contained in Paragraph 20.


21.    That Plaintiff was extremely embarrassed and humiliated by GREGG's

conduct during the meeting.

**ANSWER:** Defendant denies the allegations contained in Paragraph 21.


22.    That also on or about June 29, 2006, GREGG asked Plaintiff and other

workers to line pieces of wood up against the wall so that the trucks would not mark up

the wall. However, when GREGG gave them said assignment, he made a sexually

offensive comment: "Kiona and Erika, I need you all to handle my wood.", referring to

his penis. While laughing, GREGG then stated, "I'm just playing, but I really do need

you to move some wood." JAMES witnessed this and stated to GREGG, "Now Louis, I

told you about playing with those girls; you can't play with everybody like that. Don't get

mad if one of those girls complains that you are sexually harassing them."

**ANSWER:** Defendant denies the allegations contained in Paragraph 22.


23.    That on approximately June 29, 2006, Plaintiff complained about

GREGG's sexual harassment to LESLIE MCGINNEST, a CATERPILLAR human

resources employee.


7

**ANSWER:** Defendant is without knowledge of information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23.

24.    That MCGINNEST stated that she could not help Plaintiff because GREGG was an R&O employee and she [MCGINNEST] worked for CATERPILLAR.

**ANSWER:** Defendant is without knowledge of information sufficient to form a belief as to the truth of the allegations contained in Paragraph 24.

25.    That MCGINNEST then instructed Plaintiff to take her complaint to the R&O human resources contact, AMANDA "LNU" ("AMANDA").

**ANSWER:** Defendant is without knowledge of information sufficient to form a belief as to the truth of the allegations contained in Paragraph 25.

26.    That on or about June 30, 2006, Plaintiff complained to another R&O supervisor, RAY ABNER ("ABNER"). Plaintiff also gave ABNER a hand written note that detailed her sexual harassment complaints about GREGG. ABNER responded that he would take the complaint to AMANDA at R & D's human resources. Together, they walked up to meet with AMANDA.

**ANSWER:** Defendant admits the allegations contained in Paragraph 26.

27.    That on or about June 30, 2006, Plaintiff brought GREGG's actions to the attention of AMANDA. ABNER also gave her Plaintiff's hand written notes. AMANDA

8

stated to Plaintiff, "Kiona, I'm very sorry that this happened to you. I am going to get to the bottom of this and find out what's going on."

**ANSWER:** Defendant admits that Plaintiff made a complaint of alleged sexual harassment regarding Gregg to Amanda Olson and that Olson advised Plaintiff that she would investigate the allegations. Defendant denies the remaining allegations contained in Paragraph 27.

28.     That shortly after Plaintiff's complaint to AMANDA on June 30, 2006, AMANDA called JAMES and SENECA up to her office to discuss Plaintiff's complaint.

**ANSWER:** Defendant admits that she interviewed James and Seneca to discuss Plaintiff's allegations of sexual harassment after Plaintiff made the complaint. Plaintiff denies the remaining allegations contained in Paragraph 28.

29.     That after JAMES returned from her meeting with AMANDA, JAMES told Plaintiff, 'I told them how GREGG is extra friendly with you. I did not tell them everything because GREGG would have probably got fired."

**ANSWER:** Defendant is without knowledge of information sufficient to form a belief as to the truth of the allegations contained in Paragraph 29.

30.     That after SENECA returned from the meeting with AMANDA, he stated to Plaintiff that "I told them everything that you had told me."

9

**ANSWER:** Defendant is without knowledge of information sufficient to form a belief as to the truth of the allegations contained in Paragraph 30.

31.     That ultimately and as a result of her complaint of sexual harassment, Plaintiff was transferred, suspended and demoted, thus placing her in a position in which she was worse off for having complained.

**ANSWER:** Defendant denies the allegations contained in Paragraph 31.

32.     That Defendant's response to Plaintiff's complaint of sexual harassment is per se negligent because said response had the effect of placing Plaintiff in an inferior position thereafter.

**ANSWER:** Defendant denies the allegations contained in Paragraph 32.

33.     That R & O failed to take reasonable corrective action to prevent the harassment Plaintiff suffered as a result of GREGG's conduct.

**ANSWER:** Defendant denies the allegations contained in Paragraph 33.

34.     That R & O could have prevented said sex discrimination if it had implemented an effective anti-sex discrimination policy.

**ANSWER:** Defendant denies the allegations contained in Paragraph 34.

35.     That R & O could have prevented said sexual harassment if it had implemented an effective anti-sexual harassment policy.

**ANSWER:** Defendant denies the allegations contained in Paragraph 35.

36.    That R & O condoned sexual harassment and failed to maintain a harassment-free work environment by failing to provide adequate training, counseling, and instructions to their employees and officers, especially GREGG, with respect to sexual harassment of female employees.

**ANSWER:** Defendant denies the allegations contained in Paragraph 36.

37.    That R & O condoned sexual harassment and failed to maintain a harassment-free work environment by failing to employ an effective anti-sexual harassment policy with respect to their employees, especially GREGG.

**ANSWER:** Defendant denies the allegations contained in Paragraph 37.

38.    That R & O failed to maintain a harassment-free work environment by failing to take effective corrective action against GREGG after R & O became aware that GREGG was engaging in unwelcome sexual conduct toward Plaintiff.

**ANSWER:** Defendant denies the allegations contained in Paragraph 38.

39.    That as a result of these failures by R & O, GREGG used his authority as a supervisor to force his unwelcome sexual advances and offensive conduct upon Plaintiff.

**ANSWER:** Defendant denies the allegations contained in Paragraph 39.

11

40.    That R & O's treatment of Plaintiff was motivated by evil motive and intent, and was recklessly and callously indifferent to Plaintiff's federally protected rights.

**ANSWER:** Defendant denies the allegations contained in Paragraph 40.


41.    That the sex discrimination and sexual harassment Plaintiff was subjected to by the hands of R & O, their agents, representatives and employees was persistent in nature, unwelcome, extremely offensive, humiliating, and effective in creating a hostile and intimidating work environment for Plaintiff.

**ANSWER:** Defendant denies the allegations contained in Paragraph 41.


42.    That said continuous and persistent sex discrimination and sexual harassment adversely affected the terms and conditions of Plaintiff's employment with R & O.

**ANSWER:** Defendant denies the allegations contained in Paragraph 42.


43.    That as a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered the indignity of discrimination, the invasion of her right to be free from discrimination, and great humiliation which has manifested in physical illnesses and emotional stress on the relationships between Plaintiff and her friends, family, and colleagues.

12

**ANSWER:** Defendant denies the allegations contained in Paragraph 43.

44.    That as a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about her future and her ability to support herself, shameful embarrassment among her friends, colleagues, and co-workers, damage to her reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of life.

**ANSWER:** Defendant denies the allegations contained in Paragraph 44.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, JORDAN, respectfully requests this Court to provide the following equitable and legal remedies:

a.    advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

b.    Order a permanent injunction prohibiting Defendant from further acts of sexual discrimination and sexual harassment.

c.    Award Plaintiff, JORDAN, all costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

d.    Award Plaintiff, JORDAN, a judgment against Defendant for reinstatement, front pay, backpay and other compensatory damages.

e.    Award Plaintiff-prejudgment interest.

f.    Grant judgment against Defendant for punitive damages for willful and wanton conduct.

13

g.  Enter an order requiring Defendant to implement effective steps to eliminate sex discrimination and sexual harassment from Defendant's organizations.

h.  Grant such other and further relief as this Court deems just and proper.

**ANSWER:** Defendant denies that Plaintiff is entitled to any of the requested relief and denies that she is entitled to any relief whatsoever.

## COUNT II

## COUNT III - RETALIATORY TRANSFER, SUSPENSION AND DEMOTION

45.    Plaintiff incorporates the preceding paragraphs by reference here.

**ANSWER:** Defendant incorporates the preceding answers by reference herein.

46.    That Plaintiff complained about GREGG's sexual harassment to Defendant's management employees.

**ANSWER:** Defendant admits that Plaintiff made allegations of sexual harassment against Gregg to Defendant's management employees. Defendant denies the remaining allegations contained in Paragraph 46.

47.    That on or around June 30, 2006, Defendant purportedly investigated Plaintiff's allegations of sexual harassment against GREGG.

**ANSWER:** Defendant admits that it investigated Plaintiff's allegations of sexual harassment against Gregg beginning on June 30, 2006. Defendant denies the remaining allegations contained in Paragraph 47.

14

48.    That on or around July 7, 2006, Plaintiff had a meeting with CECIL ("CECIL"), AMANDA, and BOB MCGEE ("MCGEE"), the human resources supervisor.

**ANSWER:** Defendant denies that Bob McGee was the human resources supervisor. Defendant admits the remaining allegations contained in Paragraph 48.

49.    That in said meeting, AMANDA stated to Plaintiff, "Kiona, the investigation is over with. You lied to us. You told us that GREGG said these things, and we have a witness who said you lied to us to get on first shift."

**ANSWER:** Defendant admits that Amanda advised Plaintiff that the investigation was completed and that people had advised the company that Plaintiff had made the allegations to get her shift changed. Defendant denies the remaining allegations contained in Paragraph 49.

50.    That Plaintiff then asked, "Who is the witness that said I lied?" AMANDA responded, "We can't tell you that. Okay, we are suspending you for 3 days for lying." When you return, you will return to your Class I job as Repak.

**ANSWER:** Defendant admits that Plaintiff asked for the identity of witnesses and that Amanda declined to identify witnesses and admits that Plaintiff was advised that she was being suspended for three days and would be working in repak following her return. Defendant denies the remaining allegations contained in Paragraph 50.

51.    That Plaintiff was suspended from work from Friday July 7, 2006, through Tuesday July 11, 2006.

**ANSWER:**  Defendant admits that Plaintiff was given a three-day suspension from July 10-12, 2006 but was permitted to work on July 12, 2006. Defendant denies the remaining allegations contained in Paragraph 51.

52.    That Plaintiff was also transferred to a more physically challenging department.

**ANSWER:**  Defendant admits that repak position is more physically challenging than the position of kitter.

53.    That Plaintiff was demoted from the kitter position to the repak position.

**ANSWER:**  Defendant denies the allegations contained in Paragraph 53.

54.    That as a result, Plaintiff's job location changed, and her job class was downgraded from Class III to Class I.

**ANSWER:**  Defendant admits that Plaintiff's job location changed and that repak is a different class than kitter. Defendant denies the remaining allegations contained in Paragraph 54.

55.    That as a further result of the demotion, Plaintiff had to work in much dirtier conditions that required a lot of manual labor and heavy lifting. Finally, Plaintiff

16

was one of only two female employees in that entire department. The other female

employee was a supervisor and did not have to engage in the same heavy lifting that

Plaintiff was required to do.

**ANSWER:** Defendant admits that the repak position required manual labor and lifting,

is not as clean as the "clean room" in which the position of kitter worked and that

Plaintiff was one of two female employees performing the repak position. Defendant

denies the remaining allegations contained in Paragraph 55.


56.    The adverse actions stated above followed Plaintiff's protected activity

within such a period of time as to raise an inference of retaliatory motivation.

**ANSWER:** Defendant denies the allegations contained in Paragraph 56.


57.    That the conduct alleged above by Defendant as well as other inferior and

retaliatory acts directed against Plaintiff for complaining about harassment amounts to

retaliation in violation of the law.

**ANSWER:** Defendant denies the allegations contained in Paragraph 57.


## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, JORDAN, respectfully requests this Court to provide
the following equitable and legal remedies:

a.  Advance this case on the docket, order a speedy hearing at the earliest practicable
date and cause this case to be expedited in every possible way.

b.  Order a permanent injunction prohibiting Defendant from further acts of sexual
discrimination and sexual harassment.

17

c.  Award Plaintiff, JORDAN, all costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

d.  Award Plaintiff, JORDAN, a judgment against Defendant for reinstatement, front pay, backpay and other compensatory damages.

e.  Award Plaintiff prejudgment interest.

f.  Grant judgment against Defendant for punitive damages for willful and V wanton conduct.

g.  Enter an order requiring Defendant to implement effective steps to eliminate sex discrimination and sexual harassment from Defendant's organizations.

h.  Grant such other and further relief as this Court deems just and proper.

**ANSWER:**  Defendant denies that Plaintiff is entitled to any of the requested relief and denies that Plaintiff is entitled to any relief whatsoever.

<u>**COUNT III**</u>
<u>**COMPLAINT OF KIONA JORDAN FOR**</u>
<u>**QUID PRO QUO SEXUAL HARASSMENT AND SEX DISCRIMINATION**</u>

58.  Plaintiff incorporates the preceding paragraphs by reference here.

**ANSWER:**  Defendant incorporates by references its answers to the preceding paragraphs.

59.  That GREGG explicitly conditioned Plaintiff's enjoyment of the various terms, conditions, and benefits of employment on her submission to his sexual advances. Such terms and conditions of employment include her employment itself and other conditions.

**ANSWER:**  Defendant denies the allegations contained in Paragraph 59.

18

60.    That R & O's conduct in subjecting Plaintiff to inferior terms and conditions of employment amounts to quid pro quo sexual harassment in violation of the law.

**ANSWER:** Defendant denies the allegations contained in Paragraph 60.

61.    That as a further result of said harassing conduct, Plaintiff was adversely affected by the various tangible employment actions that she suffered at the hands of R & O and its agents.

**ANSWER:** Defendant denies the allegations contained in Paragraph 61.

62.    That Defendant is strictly liable for the conduct complained of as the Plaintiff suffered adverse employment action resulting directly from the harassment.

**ANSWER:** Defendant denies the allegations contained in Paragraph 62.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, JORDAN, respectfully requests this Court to provide the following equitable and legal remedies:

a.    Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

b.    Order a permanent injunction prohibiting Defendant from further acts of sexual discrimination and sexual harassment.

c.    Award Plaintiff, JORDAN, all costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

19

d.  Award Plaintiff, JORDAN, a judgment against Defendant for reinstatement, front pay, backpay and other compensatory damages.

e.  Award Plaintiff prejudgment interest.

f.  Grant judgment against Defendant for punitive damages for willful and wanton conduct.

g.  Enter an order requiring Defendant to implement effective steps to eliminate sex discrimination and sexual harassment from Defendant's organizations.

h.  Grant such other and further relief as this Court deems just and proper.

**ANSWER:** Defendant denies that Plaintiff is entitled to the relief requested and denies that Plaintiff is entitled to any relief whatsoever.

## AFFIRMATIVE DEFENSES

1. Defendant had in place reasonable measures to prevent and remedy sexual harassment and acted reasonably in preventing and remedying any harassment and Plaintiff failed to reasonably utilize said measures or otherwise avoid harm.

2. To the extent Plaintiff has suffered any damages, she has failed to mitigate her damages.

3. Plaintiff is barred from recovery by the doctrine of unclean hands.

4. Defendant would have taken the same actions toward Plaintiff absent discrimination or retaliation.

20

WHEREFORE, Defendant respectfully requests that this Court enter an order in its favor and against Plaintiff and deny Plaintiff any remedy or relief whatsoever and award to Defendant its costs and attorney's fees.

Respectfully submitted,

R & O AURORA, INC.
Defendant

Attorney for Defendant

John O'Connor
Elizabeth Hubbard
Brian Ekstrom
Hubbard & O'Connor, Ltd.
900 West Jackson Boulevard
Six West
Chicago, Illinois 60607
(312) 421.5960

21

# Olson Exhibit 59

## Defendant's Answers to Plaintiff's First Set of Interrogatories Directed to Defendant

)

}
}

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| KIONA JORDAN, | ) | Case No.: 07-CV-6452 |
| Plaintiff, | ) | |
| | ) | Judge: David H. Coar |
| v. | ) | |
| | ) | Magistrate Judge: Morton Denlow |
| R&O AURORA, INC., | ) | |
| Defendant. | ) | |

### DEFENDANT'S ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES DIRECTED TO DEFENDANT

Defendant, R&O Aurora, Inc. ("R&O"), by and through its attorneys, John O'Connor and Brian Ekstrom of Hubbard & O'Connor, Ltd. and Matthew Pappas of Pappas & Schnell, hereby answer Plaintiff Kiona Jordan's ("Jordan" or "Plaintiff") First Set of Interrogatories Directed to Defendant as follows:

### GENERAL OBJECTIONS

Defendant has the following general objections to Plaintiff's First Set of Interrogatories Directed to Defendant:

1.     Defendant objects to Plaintiff's First Set of Interrogatories to the extent they are vague, ambiguous, overbroad, unduly burdensome, call for a legal conclusion and seek information that is confidential, unlikely to lead to the discovery of admissible evidence, irrelevant, privileged, the subject of attorney client privilege and attorney work product, an improper subject of inquiry under Federal Rules of Civil Procedure 26 and 33 or in Plaintiff's possession or otherwise equally available to Plaintiff.

−1−

EXHIBIT

59

2.      Defendant objects to Defendant's First Set of Interrogatories to the extent they seek to violate privacy and other rights of third parties.

These General Objections are applicable to each and every one of the following answers and objections, and failure to repeat a General Objection in response to a specific interrogatory shall not be deemed a waiver of the objection.

## ANSWERS

1.      Identify each person who supervised Plaintiff, to whom Plaintiff reported, or who gave directions to Plaintiff during her employment with Defendant.

**Answer:** Defendant objects to interrogatory no. 1 on the basis that it seeks information that is overly broad and irrelevant and not reasonably calculated to lead to the discovery of admissible evidence and seeks information already in Plaintiff's possession. Without waiving said objections, Plaintiff was supervised at various times by Ray Ebner, Lewis Gregg and Norma Vargas. Pursuant to FRCP 33, see also the documentation identified in Defendant's Rule 26(a) Disclosures. Investigation continues and this answer will be supplemented when further information becomes available.

2.      For each person identified in response to number 1 above, state the time period during which each such person supervised Plaintiff.

**Answer:** Defendant objects to interrogatory no. 1 on the basis that it seeks information that is overly broad and irrelevant and not reasonably calculated to lead to the discovery of admissible

–2–

evidence and already in Defendant's possession. Without waiving said objections, Ray Ebner supervised Plaintiff from her date of hire, December 7, 2005, until on or about June 26, 2006. Lewis Gregg supervised Plaintiff from on or about June 26, 2006 until on or about July 5, 2006. Norma Vargas supervised Plaintiff from on or about July 5, 2006 until she resigned, her last day of work being on or about July 26, 2006. Pursuant to FRCP 33, see also the documentation identified in Defendant's Rule 26(a) Disclosures. Investigation continues and this answer will be supplemented when further information becomes available.

3.    Identify each person who supervised Louis Greg ("Greg"), to whom Greg reported, or who gave directions to Greg during his employment with Defendant and for each person identified, state the time period of said supervision.

**Answer:** Defendant objects to interrogatory no. 3 on the basis that it seeks information that is not relevant and is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, Lewis Gregg was supervised by Don Chapman during the period he supervised Plaintiff.

4.    Identify each present or former employees of Defendant who have worked in the same department as Greg or under his supervision, and for each person identified, state his/her dates of employment and/or dates of such supervision.

**Answer:** Defendant objects to interrogatory no. 4 on the basis that it is overly broad and unduly

burdensome, seeks information that is not relevant and it is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, pursuant to FRCP 33, see also the information and documentation identified in Defendant's Rule 26(a) Disclosures. As of July 2006, the following individuals reported to Lewis Gregg: Angela Haros, Clarissa James, Marlen Limon, Taquilla Stephens, Francis Frigo, Allen Helm, Jon Johnson, Christopher Perry, Terri Lane, Lou Autman, Percy Dukes, Angel Gonzalez, Agustin Matamoros, Gerardo Calderon, Richard Heft, Stanley Keen, Crescencio Martines and Charles Martin. Investigation continues and this answer will be supplemented when further information becomes available.

5.    Identify each employee, including Plaintiff, who has alleged, complained or reported that he/she was sexually discriminated against, sexually harassed or subjected to retaliatory conduct by Greg and for each person identified, state the dates, nature and particulars of his/her allegations.

**Answer:** Defendant objects to interrogatory no. 5 on the basis that it is overly broad and unduly burdensome, seeks information that is not relevant, is not reasonably calculated to lead to the discovery of admissible evidence and seeks information already within the possession of Plaintiff's counsel. Subject to and without waiving these objections, no employee made any such allegations, complaints or reports against Gregg at or prior to the time Plaintiff made such allegations. See documents identified in Defendant's Rule 26(a)(1) disclosures.

–4–

6.    Identify each position held by Greg during his employment with Defendant and for each position identified, state the dates, his job duties, his supervisor and subordinates while in said position.

**Answer:** Defendant objects to interrogatory no. 6 on the basis that it is overly broad and unduly burdensome, seeks information that is not relevant and is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, Gregg was a forklift driver from the time of his hire on or about April 18, 2005 until on or about June 26, 2006, during which time he was supervised at various times by Sam Stockton, Norma Vargas and Juanita Hernandez. Starting on or about June 26, 2006 he held the position of supervisor in the kitter department during the relevant time period that he supervised Plaintiff. Gregg supervised the kitters, whose job duties included ordering materials, picking up parts, building kits and driving fork lifts. Gregg's supervisor was Don Chapman.

7.    Identify each person that has been disciplined or evaluated by Greg, including but not limited to any of the following: verbal warnings or reprimands, written warnings or reprimands, suspensions or terminations, written or unwritten performance evaluations.

**Answer:** Defendant objects to interrogatory no. 7 on the basis that it is overly broad and unduly burdensome, seeks information that is not relevant and is not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects on the grounds that interrogatory no. 7 seeks information that may violate the privacy rights of third parties. Without waiving these objections, during the time Gregg supervised Plaintiff, he did not give Plaintiff any

-5-

discipline or evaluation.

8.  Identify each class and/or position held by Plaintiff, the dates that she held each such

    position, the name of each person who participated in the decision to place her in said

    class or position, and each fact supporting each reason that she was place [sic] in said

    class and/or position.

**Answer:** Defendant objects to interrogatory no. 8 on the basis that it is overly broad, unduly

burdensome, seeks information that is not relevant and is not reasonably calculated to lead to the

discovery of admissible evidence and seeks information already in Plaintiff's possession.

Without waiving these objections, Plaintiff was hired by Defendant as a "floater" on December 7,

2005, she was moved to a "kitter" position on or about January 30, 2006 but may have been

performing kitter duties before that. On or about July 5, 2006, Plaintiff was moved to a "repack"

position by human resources director Amanda Olson and project manager Don Chapman in order

to move her away from Lewis Gregg and accommodate her request. Pursuant to FRCP 33, see

also documents Bates-stamped Nos. 1 to 93.

Investigation continues.

9.  For each position or class identified in number 9 [sic] above, describe the duties of each

    such position or class, the location where Plaintiff worked in said position and identify

    each person who may be aware of any facts relating to the decision to place Plaintiff in

    said class or position.

**Answer:** Defendant objects to interrogatory no. 9 on the basis that it is overly broad, unduly burdensome, seeks information that is not relevant and is not reasonably calculated to lead to the discovery of admissible evidence and seeks information already in Plaintiff's possession. Without waiving these objections, pursuant to FRCP 33, see documents identified in Defendant's Rule 26 Disclosures Bates-stamped 1-93, and kitter job information identified in response to Plaintiff's document requests.

Investigation continues.

)

10.    Describe each disciplinary action and/or counseling issued to Plaintiff during her employment with Defendant and for each incident identified, describe the dates, nature of discipline, the individuals who participated in the decision to issue said discipline, and each fact supporting the reasons for each such discipline.

**Answer:** Defendant objects to interrogatory no. 10 on the basis that it is overly broad, unduly burdensome, seeks information that is not relevant and is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, pursuant to FRCP 33, see documents identified in Defendant's Rule 26(a) disclosures Bates-stamped 1-93.

)

11.    If Plaintiff was transferred, demoted, or suspended at any time during her employment, describe with specificity, the date each such action, the decision makers in connection with each such action, each reason for each such action and all facts supporting each reason for each such action.

–7–

**Answer:** Defendant objects to interrogatory no. 11 on the basis that it is overly broad, unduly burdensome, seeks information that is not relevant and seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, pursuant to FRCP 33, see documents identified in Defendant's Rule 26(a) disclosures Bates-stamped 1-93.

12. Describe in detail all sex discrimination, harassment, and/or retaliation charge(s), lawsuit(s), and/or complaint(s), including internal complaints and grievances, made against Defendant or any of its employees from 2001 to the present. In your description of each such matter, state:

    a.    the name of the complaining party, charging party or plaintiff;
    b.    the name of the agency or court with whom the charge or suit was filed;
    c.    the charge number, case number or any other identifying number of each such claim;
    d.    the acts of discrimination alleged; and
    e.    the disposition of the matter.

**Answer:** Defendant objects to interrogatory no. 12 on the basis that it is overly broad, unduly burdensome, seeks information that is not relevant and is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, see response to interrogatory no. 5.

13. Identify each person(s) who Defendant believe [sic] has any information or knowledge of

facts relating to Plaintiff's charge, complaint allegations or Defendant's defense to such,

and for each person identified, state each fact that he/she may be aware of.

**Answer:** Defendant objects to interrogatory no. 13 on the basis that it is overly broad, unduly

burdensome. Without waiving these objections, pursuant to FRCP 33 Defendant directs Plaintiff

to in Defendant's Rule 26(a) disclosures and documents Bates-stamped 42-93. Individuals

having knowledge of the facts relating to Plaintiff's charge, complaint, allegations and

Defendant's defenses to such may include human resources director Amanda Olsen, Lewis Gregg

and Don Chapman. See also Defendant's Rule 26(a)(1) disclosures.

Investigation continues.

14.    Identify each individual who was counseled or disciplined as a result of Plaintiff's

       allegations or complaint of discrimination or harassment, and describe the dates and

       nature of each discipline issued.

**Answer:** Defendant objects to interrogatory no. 14 on the basis that it seeks information that is

irrelevant and it is not reasonably calculated to lead to the discovery of admissible evidence.

Without waiving these objections, pursuant to FRCP 33, please see documents Bates-stamped

42-93.

15.    Identify each person whom Defendant will or may call as an expert witness at the trial of

this case, and with respect to each such person, describe the nature and subject of his or her testimony.

**Answer:** Defendant has not yet determined whether it will call an expert witness or the identity of any such expert witness but will identify any expert witness under FRCP 26.    Investigation continues.

16.    Identify each person who was interviewed by Defendant in connection with its investigation of Plaintiff's allegations and for each person identified, describe in detail each statement given by him or her in connection with the investigation.

**Answer:** See documents produced by Defendant Bates-stamped 42-93.

17.    Identify each person who participated in Defendant's investigation of Plaintiff's complaint and for each person identified, state the nature of such participation, identifying each person who may have been interviewed, the dates and facts gathered from of each such interview.

**Answer:** Defendant objects to interrogatory no. 17 to the extent that it seeks information protected by attorney-client privilege. Without waiving this objection, see documents produced by Defendant Bates-stamped 42-93.

18.     State each fact and/or witness that may support Defendant's defense that Plaintiff's

potential recovery is barred in whole or in part because Defendant exercised reasonable

care to prevent and correct promptly any harassing, discriminatory, or retaliatory behavior

and Plaintiff unreasonably failed to take advantage of preventive and corrective

opportunities provided by Defendant or to avoid harm otherwise.

**Answer:** See Defendant's Rule 26(a) Disclosures and documents produced generally and

documents Bates-stamped 1-93. See also Plaintiff's Complaint and charge. Facts supporting

Defendant's defenses include, among others, Defendant's sexual harassment policy, Defendant's

sexual harassment training procedures, the investigation conducted by Defendant pursuant to

Plaintiff's complaint, the discipline of accused harasser Lewis Gregg and the transfer of Plaintiff

at her request to another shift.

Investigation continues.

Respectfully Submitted,
R&O Aurora, Inc.,

One of Its Attorneys

## VERIFICATION

Under penalties as provided by law pursuant to 28 U.S.C. §1746, the undersigned certifies that she is the director of human resources of R & O Aurora, Inc.; that she has read the foregoing Defendant's Answer to Plaintiff's First Set of Interrogatories Directed to Defendant; that she knows the contents thereof; and that said Answer is true and correct to the best of her knowledge and belief.

_Amanda Olson_
Amanda Olson


HUBBARD & O'CONNOR, LTD.
John O'Connor
Brian Ekstrom
900 West Jackson Blvd.
Suite Six West
Chicago, IL 60607
(312) 421-5960


Matthew P. Pappas
PAPPAS & SCHNELL, P.C.
1617 Second Avenue, Suite 300
Rock Island, IL 61201
Telephone: (309) 788-7110

## CERTIFICATE OF SERVICE

TO:    Uche O. Asonye
        Mark Pando
        Asonye and Associates
        11 S. LaSalle St.
        Suite 2140
        Chicago, IL 60603
        (312) 795-9110


      I, Brian Ekstrom, certify that I caused to be served on the foregoing **Defendant's Response to Plaintiff's First Set of Interrogatories Directed to Defendant** by and First-Class U.S. Mail, proper postage prepaid, upon the above-named counsel for Plaintiff, on this 3rd day of March, 2008, by depositing same in the U.S. Mail located at 901 West Jackson Boulevard, Chicago, Illinois 60607.


HUBBARD & O'CONNOR, LTD.
John O'Connor
Brian Ekstrom
900 W. Jackson Blvd., Suite 6 West
Chicago, IL 60607
(312) 421-5960

-13-

# Exhibit 60

# Lewis Gregg termination notice

RO-J000158

ENTERED

# SEPARATION NOTICE

**Employee Name: Lewis Gregg**

**Position: Supervisor**

**Separation Date: 9/05/06**    **Last Day Worked: 9/01/06**

**Date Notified: _____**
(of leave of absence or resignation)

**Supervisor: Louis W Vajko**    **Date Completed: 9/06/06**

**Type of Separation**

☐ Resignation ☐ Leave of Absence

☐ Layoff ☐ Workers Compensation

☒ Dismissal

**Reason: Harassment**

_____

_____

**Recommended for rehire:** ☐ Yes ☒ No ☐ N/A

Signature _____

Print Name _____

| SUPERVISOR USE |
|---|
| ☐ Notify IT ☐ Uniform ☒ Cell Phone ☐ Pager ☐ Credit Card ☐ Laptop |
| ☐ Keys ☐ Badge ☐ Tools ☐ Auto ☐ Other _____ |

| HR/PAYROLL USE |
|---|
| COBRA: ☐ Health ☐ Dental ☐ Life ☐ 401K FMLA: ☐ Y ☐ N ☐ Garnishment ☐ Termed in Kronos |
| MCRA & DCRA Balance _____ ☐ Direct Deposit ☐ Advance Hire Date _____ Safety Balance _____ |
| Auto Benefit _____ Vacation Pay _____ Date of Final Payroll _____ |


FAXED
9/6/06