1   **TRANSCRIBED FROM DIGITAL RECORDING**

2   IN THE UNITED STATES DISTRICT COURT
    FOR THE NORTHERN DISTRICT OF ILLINOIS
3              EASTERN DIVISION

4
    KIONA JORDAN,                    )
5                                    )
                 Plaintiff,          )
6                                    )  Case No. 07 C 6452
    -vs-                             )
7                                    )  Chicago, Illinois
    R & O AURORA, INC.,              )  July 2, 2008
8                                    )  9:16 a.m.
                 Defendant.          )
9

10              TRANSCRIPT OF PROCEEDINGS
       BEFORE THE HONORABLE MORTON DENLOW, MAGISTRATE JUDGE
11
    APPEARANCES:
12
    For the Plaintiff:    MR. MARK PANDO
13                        Asonye & Associates
                          11 South LaSalle Street
14                        Suite 2140
                          Chicago, IL  60603
15                        (312) 795-9110

16  For the Defendant:    MR. BRIAN D. EKSTROM
                          Hubbard & O'Connor, Ltd.
17                        900 West Jackson Boulevard
                          Six West
18                        Chicago, IL  60607
                          (312) 421-5960
19

20

21  Transcriber:

22          KATHLEEN M. FENNELL, CSR, RMR, FCRR
                   Official Court Reporter
23              United States District Court
        219 South Dearborn Street, Suite 2144-A
24               Chicago, Illinois  60604
                Telephone:  (312) 435-5569
25        email:  Kathleen_Fennell@ilnd.uscourts.gov


EXHIBIT A

```
 1        (Proceedings heard in open court:)
 2            THE CLERK:  07 C 6452, Jordan versus R & O Aurora.
 3            MR. PANDO:  Good morning, your Honor.  Mark Pando on
 4   behalf of the plaintiff.
 5            THE COURT:  Go ahead and spell your last names for
 6   the record.
 7            MR. PANDO:  P-A-N-D-O.
 8            MR. EKSTROM:  Good morning.  Brian Ekstrom on behalf
 9   of the defendant, E-K-S-T-R-O-M.
10            THE COURT:  Pleased to work everything out, so that's
11   great.
12            MR. PANDO:  In response --
13            THE COURT:  What's still outstanding?
14            MR. PANDO:  Everything in the motion.  I haven't
15   received any supplemental discovery responses from defendant.
16            THE COURT:  You two go out and talk in the conference
17   room and figure out what's still outstanding, okay?  Because
18   there's clearly a disconnect between the papers I'm receiving,
19   and rather than sending me the papers, I'd rather the two of
20   you sit and talked to each other, okay?
21            MR. PANDO:  That's fine, your Honor.
22            THE COURT:  There's a conference room out there.  You
23   go sit and talk to each other and then come back and tell me
24   what you've agreed to and what you haven't agreed to, okay?
25            MR. EKSTROM:  Okay, your Honor.
```

1       MR. PANDO: Thank you.
2    (Case passed and recalled at 9:34 a.m.)
3       THE CLERK: 07 C 6452, Jordan versus R & O Aurora.
4       MR. PANDO: Good morning again, your Honor. Mark
5  Pando.
6       We've been able to agree on the majority of the
7  issues with firm dates. There is one outstanding issue which
8  is a personnel file of the decisionmaker.
9       THE COURT: Okay. So let's talk about that. You
10 want to spread of record what your agreements are?
11      MR. PANDO: Yes, your Honor.
12      THE COURT: Okay. With respect to the plaintiff's
13 motion to compel, the parties agree as follows:
14      Okay, go ahead.
15      MR. PANDO: With respect to Interrogatory No. 5 --
16      THE COURT: Oh, and I'm going to say as stated in
17 open court. Agreed as stated in open court.
18      MR. PANDO: With respect to Plaintiff's Interrogatory
19 No. 5, defendant would provide supplemental responses within
20 seven days, which is the 9th of July.
21      THE COURT: And if at any time defendant disagrees,
22 please --
23      MR. EKSTROM: Okay, your Honor.
24      THE COURT: -- please so state. Silence will be
25 deemed an affirmation.

1     MR. EKSTROM:  Fine, your Honor.

2     MR. PANDO:  With respect to Interrogatory No. 4,
3 defendant will provide a supplemental response within seven
4 days, which is the 9th of July.

5     With respect to Interrogatory No. 7, defendant will
6 provide a written stipulation that the individual harasser was
7 a supervisor under Title VII.

8     MR. EKSTROM:  I'd like to interject there.  That
9 stipulation is a limited stipulation for a limited period of
10 time during which the supervisor was, in fact, the supervisor
11 of the plaintiff.

12     THE COURT:  Is that agreeable?

13     MR. PANDO:  That's agreeable.

14     With respect to Production Request No. 12 -- No. 6
15 and Interrogatory -- excuse me.  Production Request No. 6,
16 defendant will provide supplementation within 14 days.

17     THE COURT:  Okay.

18     MR. EKSTROM:  Wait, which -- which was -- this
19 verification, is that --

20     MR. PANDO:  The other charges of discrimination.

21     MR. EKSTROM:  I thought that was Interrogatory 12 and
22 Document Request 8.

23     MR. PANDO:  I apologize, No. 8.  Production Request
24 No. 8 and Interrogatory No. 12, defendant will provide
25 supplementation within 14 days.

1      THE COURT:  Very good.

2      MR. PANDO:  With respect to Production Request 38,
3 defendant will provide a letter indicating that no such
4 documents exist.

5      With respect to Production Requests 45, 49, 50 and
6 51, defendant will provide a protective order which contains
7 language that they will supplement these documents should
8 plaintiff survive summary judgment.

9      And with respect to Production Request No. 62,
10 defendant will provide supplementation within 14 days.

11     THE COURT:  The only point I want to make is that you
12 both appear to be young attorneys, both appear to be young
13 attorneys, and you're both going to practice law for a long
14 time in this community and you may have occasion to come up
15 against each other from time to time.  And I know there's a
16 great emphasis on technology in your -- boy, do I feel old.

17     There's a great emphasis on tech -- I'm talking to
18 these young guys -- either, you know, e-mails, voice mails,
19 but you don't talk to each other often enough.  So I want you
20 to try to use -- there's a new instrument called a telephone
21 that you should from time to time pick up and call each other
22 and just talk through some of these things or actually meet
23 each other for coffee or go to lunch or, you know, get to know
24 each other and work through some of these things because it's
25 a lot less expensive for your clients if you, as attorneys,

1  have good working relationships and talk these things out, you
2  know, instead of e-mailing back and forth and running to court
3  each time -- I'm not suggesting there's not a time for
4  motions, but make sure you've really exhausted things, you
5  know, before you come into court because here you both came in
6  and you said, you know, when I turned to you, you said
7  everything is still open, and you go out and 15 minutes later
8  you say I'm down to one issue.
9       I mean, you know, so there's a disconnect here.  So
10 I'm just going to encourage you to pick up the phone, talk to
11 each other, return each other's calls promptly and be
12 courteous to each other.  And if you disagree, you disagree.
13 Then I'm here to deal with it.  But, you know, the worst thing
14 that can happen is for you both to show up here and then I
15 send you out and all of a sudden you find out you can agree on
16 everything.  It just doesn't look good.  And what kind of
17 example are you setting for my law students here?  You have to
18 be tuned into that.
19      So those are my words of advice to you because you
20 have a long time -- you have a long time to practice, and
21 let's make it fun.
22      MR. PANDO:  Thank you, your Honor.
23      THE COURT:  Okay.  So now you have a dispute.  Let me
24 deal with the dispute, or did we finish your list?
25      MR. PANDO:  That -- yes, your Honor.

1       THE COURT: Okay.
2       MR. PANDO: The dispute stems from the personnel file
3  of the decisionmaker in this case. Plaintiff believes that
4  we're entitled to the entire personnel file with redactions of
5  any sensitive information.
6       THE COURT: What is it that you're looking for as it
7  relates to the decisionmaker that might be probative to the
8  case?
9       MR. PANDO: Potentially whether or not there's
10 anything regarding the plaintiff, any claims of discrimination
11 against the decisionmaker, just -- the reading of the case law
12 cited in the motion indicates that we would be entitled to --
13 to the personnel file, minus sensitive information.
14      MR. EKSTROM: Your Honor, first of all, you know, I
15 don't know if you got a chance to look at some of the
16 correspondence, but, you know, we were trying to negotiate an
17 agreement on this issue and, you know, our last correspondence
18 had said, you know, we were willing to provide anything
19 related to the plaintiff from the personnel file, anything
20 relating to any other discrimination claims, you know,
21 anything of that sort.
22      Then the next communication we got was this motion.
23 So we think it's a little inappropriate, but we are willing
24 to, you know, provide those sort of documents.
25      THE COURT: It would seem to me that anything related

1  to the plaintiff and any other claims of discrimination or any
2  discipline taken against the supervisor arising out of either
3  other claims of discrimination or arising out of matters
4  dealing with the plaintiff would be appropriate.
5           Other things such as, you know, compensation or
6  health information or any of that stuff, you know, need not be
7  included.  So rather than -- rather than excluding -- I mean
8  rather than giving everything and taking stuff out, we're just
9  going to -- I'm going to order defendant to produce the
10 following:
11          1, any matters -- any matters in the personnel file
12 related to the plaintiff; any matters in the personnel file
13 related to other claims of discrimination against the
14 supervisor; and any disciplinary action taken against the
15 supervisor arising out of claims of discrimination or dealings
16 with the plaintiff.  Those should be produced.
17          MR. PANDO:  And if we may, could we set a deadline on
18 that?
19          THE COURT:  14 days.
20          MR. PANDO:  Thank you.
21          MR. EKSTROM:  Your Honor, just to clarify on this
22 issue.  The personnel file sought is the HR manager, and when
23 you say other claims against the supervisor, are you referring
24 to the plaintiff's supervisor, not the HR person?
25          THE COURT:  I'm talking about the -- I mean you're

1  looking at the file of the plaintiff's supervisor that's in
2  the HR department, right?
3            MR. EKSTROM: No, your Honor. We've already produced
4  the file of -- or the personnel file of the supervisor to the
5  plaintiff.
6            MR. PANDO: It's the personnel file of the
7  decisionmaker, which is an HR representative.
8            THE COURT: Oh, okay.
9            MR. PANDO: So it's the non-harassing.
10           THE COURT: Okay. So -- well -- so if there were
11 other claims of discrimination against the HR representative,
12 those should be produced.
13           MR. PANDO: That's fine, your Honor.
14           THE COURT: Things related to the plaintiff should be
15 produced, and if the HR person was disciplined as a result of
16 claims of discrimination or disciplined as a result of things
17 that happened with the plaintiff, that I think might be
18 probative.
19           In other words, if the HR supervisor for some reason
20 has a record of, you know, discrimination that's been
21 recognized within the company, that may be probative.
22           Anything else?
23           MR. PANDO: No, your Honor. Thank you.
24           MR. EKSTROM: Thank you, your Honor.
25           THE COURT: Okay. Now, where are we -- where are we

1  on the settlement of this case?
2          MR. PANDO:  We have not engaged --
3          THE COURT:  What?
4          MR. PANDO:  We have not engaged in settlement
5  discussions.
6          THE COURT:  What's the nature of the claim?
7          MR. PANDO:  Sexual harassment, discrimination and
8  retaliation.
9          THE COURT:  Is she still working there?
10         MR. PANDO:  She was terminated -- excuse me.  She
11 quit after she suffered some adverse action.
12         THE COURT:  Okay.
13         MR. EKSTROM:  We would obviously disagree with that.
14 She did -- she did quit the job though, your Honor.
15         THE COURT:  Is she claiming a constructive discharge
16 or --
17         MR. PANDO:  No, your Honor.
18         THE COURT:  Okay.  So, you know, what are the
19 damages?
20         MR. PANDO:  I don't have those in front of me, your
21 Honor.
22         THE COURT:  Where do you stand in discovery?
23         MR. PANDO:  Plaintiff's deposition will be next week,
24 and plaintiff intends to depose HR and a few other witnesses
25 that are non-management.

1  THE COURT: Okay. At what point in time will the
2  plaintiff be in a position to provide the defendant with an
3  itemization of damages and a written settlement demand?
4  MR. PANDO: Probably after we take the depositions of
5  the HR individual and the non-management employees, which we
6  hope to do before the end of July.
7  THE COURT: Okay. So can you make a settlement
8  demand by August 15th?
9  MR. PANDO: Yes.
10  MR. EKSTROM: Correct me if I'm wrong, but discovery
11  is currently set to close on August 15th, is that correct?
12  MR. PANDO: That's correct.
13  THE COURT: Okay. And can you make a written
14  settlement offer two weeks thereafter?
15  MR. EKSTROM: Sure.
16  THE CLERK: August 29th.
17  THE COURT: Okay. And why don't we set a status
18  sometime in September.
19  THE CLERK: September 9th at 10:00.
20  THE COURT: If at any time before then you want to
21  set a settlement conference with my courtroom deputy, just
22  contact her and --
23  MR. PANDO: Just for clarification, your Honor, would
24  Judge Coar's briefing schedule still be in effect?
25  THE COURT: Yeah, I'm not changing Judge Coar's

1  schedule. What briefing schedule does he have for you?

2      MR. PANDO: I believe summary judgment would be due

3  at some point around the 15th of August.

4      THE COURT: Dispositive motions with supporting

5  memoranda due by 9-15-08, so I mean would you rather come in

6  sooner rather than later?

7      MR. PANDO: No, no, that would be fine, just to give

8  me enough time to depose these other individuals.

9      THE COURT: But you may not want to start preparing

10  summary judgment motions -- I mean I'd prefer you talk

11  settlement rather than summary judgment motions, so come on in

12  and see where you stand on September 9th, okay?

13      MR. PANDO: Okay.

14      THE COURT: Very good. Thank you.

15      MR. PANDO: Thank you, your Honor.

16      MR. EKSTROM: Thank you.

17      THE CLERK: The status hearing that was set for

18  July 24th is stricken.

19      MR. PANDO: Okay, thank you.

20  (Which were all the proceedings heard.)

21              CERTIFICATE
    I certify that the foregoing is a correct transcript from

22  the digital recording of proceedings in the above-entitled
    matter to the best of my ability, given the limitations of

23  using a digital-recording system.

24  *Kathleen M. Fennell*                         *September 12, 2008*

25  Kathleen M. Fennell                             Date
    Official Court Reporter